1920
1930
1934
1936
1940
1950
1960
1963
1970
1980
Waybill signed on March 9, 2001
1990
1999
2000
2001

◆ (year)  Effective year of ratification of, or accession to, identified treaties by the United States or Belgium

OWC — Original Warsaw Convention of 1929       ☐ No treaty binds both U.S. and Belgium

THP — The Hague Protocol of 1955               ☐ OWC binds both U.S. and Belgium

MP4 — Montreal Protocol No. 4 of 1975          ▨ THP binds both U.S. and Belgium

CONSOLIDATED EDISON COMPANY
OF NEW YORK, INC., Plaintiff–
Appellant,

v.

UGI UTILITIES, INC., Defendant–
Appellee.

Docket No. 04–2409–CV.

United States Court of Appeals,
Second Circuit.

Argued: May 20, 2005.

Decided: Sept. 9, 2005.

Jay N. Varon, Esq. (James M. Caragher, Esq., Gary D. Rovner, Esq., Max Welsh, Esq., Peter N. Wang, Esq., on the brief), Foley & Lardner LLP, Washington, DC and New York, NY, Appearing for Defendant–Appellee.

Before: KATZMANN, HALL, Circuit Judges, and MURTHA, District Judge.[1]

KATZMANN, Circuit Judge.

In this action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), Con Edison ("Con Ed") seeks to be reimbursed by UGI Utilities, Inc. ("UGI") for costs it has incurred cleaning up certain contaminated sites in Westchester County, New York. The district court (Chin, *J.*) granted summary judgment to UGI on all claims. *Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.*, 310 F.Supp.2d 592, 610 (S.D.N.Y.2004). In this opinion, we address whether, in light of a recent Supreme Court decision, *Cooper Industries, Inc. v. Aviall Services, Inc.*, —— U.S. ——, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004), subject matter jurisdiction exists in this case. We conclude that it does because Con Ed's claims arise under CERCLA. In a summary order issued simultaneously with this opinion, we analyze the merits of the district court's summary judgment grant. We affirm in part and reverse in part and remand for further proceedings.

## BACKGROUND

This litigation concerns the cleanup of sites in Westchester County that allegedly were contaminated by operations at Manufactured Gas Plants, industrial facilities at which gas was produced from coal, oil, or

Woody N. Peterson, Esq., Dickstein Shapiro Morin & Oshinsky LLP, New York, NY, Appearing for Plaintiff–Appellant.

1. Hon. J. Garvan Murtha, United States District Judge for the District of Vermont, sitting by designation.

other energy sources.[2] In October 1999, the New York State Department of Environmental Conservation (the "Department") asked Con Ed for information about locations at which the company or its predecessors formerly operated Manufactured Gas Plants. Con Ed owns or operates many such plants, including ten in Westchester County, New York (the "Westchester Plants").[3] On August 15, 2002, Con Ed entered into a "Voluntary Cleanup Agreement" to clean up more than 100 sites at which Con Edison or its predecessors might have formerly owned or operated Manufactured Gas Plants. These sites apparently included the sites of seven of the ten Westchester Plants.[4]

Prior to entering into this Voluntary Cleanup Agreement, Con Ed sued UGI seeking to recoup costs Con Ed had incurred and would incur in cleaning up sites allegedly contaminated by the ten Westchester Plants. Con Ed represents that it has already expended in excess of $4 million to investigate and clean up the sites of the Westchester Plants, and that the total amount to complete investigation and cleanup may exceed $100 million. Con Ed alleges that UGI or its predecessors operated the Westchester Plants, and that UGI is thus liable for remedial costs under

CERCLA, as well as under New York State Navigation Law and negligence law.

On July 2, 2003, UGI moved for summary judgment on Con Ed's claims against it. On November 25, 2003, the district court heard oral argument, at the conclusion of which the court dismissed Con Ed's veil-piercing claims and state law claims, as well as all claims relating to the three Westchester Plants located in Yonkers, based on a release granted to UGI. After initially reserving judgment on the operator claims concerning the remaining Westchester Plants, the district court, on March 29, 2004, granted UGI's motion for summary judgment in its entirety, finding that no reasonable juror could conclude that UGI is subject to operator liability under CERCLA with respect to the Westchester Plants not located in Yonkers.

Con Ed appealed on May 4, 2004, arguing that the district court erred in granting UGI summary judgment on 1) Con Ed's CERCLA operator liability claims as to the Westchester Plants not located in Yonkers, and 2) UGI's claim that it was released from liability as to the Westchester Plants located in Yonkers.

After the parties had completed briefing these issues, but before oral argument, the

---

2. According to the website of the New York State Department of Environmental Conservation, in such plants, gas was stored, and then piped to the surrounding area, where it was used for lighting, cooking, and heating homes and businesses. Manufactured Gas Plants were first built before the Civil War, and were generally closed during the first half of the twentieth century. The plants would generate a variety of contaminants, including coal tar, an oily liquid created during gas production and distribution, and purifier waste, generated when cyanide and sulfur were removed from the manufactured gas. N.Y. State Dep't of Envtl. Conservation, *General Information About MGPs,* at http://www.dec.state.ny.us/website/der/mgp_faq.html# mgp.

3. The Westchester Plants are the Mount Vernon Plant, the New Rochelle Plant, the Pelham Plant, the Port Chester Plant, the Rye Plant, the Tarrytown Plant, the White Plains Plant, the Ludlow Street Plant in Yonkers, the Nepperhan Avenue Plant in Yonkers, and the Woodworth Avenue Plant in Yonkers.

4. The plants whose sites were covered in the Voluntary Cleanup Agreement were the Mount Vernon Plant, the New Rochelle Plant, the Pelham Plant, the Rye Plant, the Ludlow Street Plant in Yonkers, the Nepperhan Avenue Plant in Yonkers, and the Woodworth Avenue Plant in Yonkers.

Supreme Court issued its decision in *Cooper Industries, Inc. v. Aviall Services, Inc.*, — U.S. ——, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004). In that decision, which we discuss below, the Court held that a party may only pursue a contribution claim under CERCLA section 113(f)(1) during or following a civil action as specified in that section. *Id.* at 583. Because no civil action has been filed against Con Ed concerning the sites of the Westchester Plants, and the First Amended Complaint states that this action is brought pursuant to section 113(f)(1), we requested additional briefing on whether subject matter jurisdiction exists in this action, in light of *Cooper Industries.* This court held oral argument on May 20, 2005.

## DISCUSSION

### A. *The CERCLA Cost Recovery and Contribution Framework*

■ CERCLA is a comprehensive federal law governing the remediation of sites contaminated with pollutants. Two of its primary goals include "encourag[ing] the timely cleanup of hazardous waste sites," and "plac[ing] the cost of that [cleanup] on those responsible for creating or maintaining the hazardous condition." *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 935–36 (8th Cir.1995) (internal quotations marks and citations omitted); *see also Key Tronic Corp. v. United States*, 511 U.S. 809, 819 n. 13, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994) (" 'CERCLA is designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others.' ") (quoting *FMC Corp. v. Aero Industries, Inc.*, 998 F.2d 842, 847 (1993)); H.R.Rep. No. 96–1016(I), at 17 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6119, 6120 (stating that CERCLA's purposes include furthering the recovery of costs for cleanup of hazardous waste sites "from persons liable

therefor" and inducing those persons "voluntarily to pursue appropriate environmental response actions").

In order to achieve these goals, CERCLA, in three separate and different provisions, authorizes parties to recoup money spent to clean up and prevent future pollution at contaminated sites or to reimburse others for cleanup and prevention at contaminated sites: (1) section 107(a), which permits the general recovery of cleanup and prevention costs; (2) section 113(f)(1), which creates a contribution right for parties liable or potentially liable under CERCLA; and (3) section 113(f)(3)(B), which creates a contribution right for parties that have resolved their liability by settlement.

Section 107(a) states that various persons, including the owner or operator of a facility, may be held liable for, among other things, "all costs of removal or remedial action incurred by the United States Government or a State ... not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A). Pursuant to this provision, the government routinely brings suits to obtain reimbursement for the costs—also known as response costs—of cleaning up and preventing future contamination at a site. *See, e.g., United States v. LTV Corp.*, 944 F.2d 997, 999 (2d Cir. 1991). In addition to permitting these suits by the federal government and the states, section 107(a) also permits private parties to pursue such "cost recovery" actions, as it makes specified entities liable for "any other necessary costs of response incurred by *any other person* consistent with the national contingency plan." § 9607(a)(4)(B) (emphasis added); *see also Key Tronic Corp.*, 511 U.S. at 818, 114 S.Ct. 1960 (noting that section 107(a) "unquestionably provides a cause of action for private parties to seek recovery of cleanup costs"); *Prisco v. A & D Carting Corp.*, 168 F.3d

593, 602 (2d Cir.1999) (stating that section 107(a) "provides a private right of action for the recovery of [response] costs in certain circumstances").

Section 113(f)(1) expressly creates a contribution right for parties liable or potentially liable under CERCLA. It states that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [section 107(a) ], during or following any civil action under [section 106] or under [section 107(a) ]." [5] 42 U.S.C. § 9613(f)(1). In *Cooper Industries*, the Supreme Court considered whether a private party who has not been sued under section 106 or section 107(a) may nevertheless obtain contribution under section 113(f)(1) from other liable parties. *See Cooper Industries, Inc. v. Aviall Services, Inc.,* —— U.S. ——, ——, 125 S.Ct. 577, 580, 160 L.Ed.2d 548 (2004). The Court concluded, as we will discuss further below, that the "natural meaning" of section 113(f)(1) "is that contribution may only be sought subject to the specified conditions, namely, 'during or following' a specified civil action." *Cooper Industries,* 125 S.Ct. at 583 (quoting 42 U.S.C. § 9613(f)(1)). Consequently, the Court held that section 113(f)(1) does not support the suit of a party that has not been the subject of judicial or administrative measures to compel cleanup. *Id.* at 582, 586.

Finally, section 113(f)(3)(B) creates contribution rights for settling parties. It provides that "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person" that has not itself settled with the United States. 42 U.S.C. § 9613(f)(3)(B).

For subject matter jurisdiction to exist in this case, Con Ed's claims must have arisen under one of the above provisions. *See* 28 U.S.C. § 1331 (granting the federal district courts jurisdiction of "civil actions arising under the ... laws ... of the United States"); *see also Barbara v. New York Stock Exch.,* 99 F.3d 49, 53 (2d Cir. 1996). Con Ed effectively concedes that, in the wake of *Cooper Industries*, it cannot bring its suit under section 113(f)(1) because it has not been sued in a civil action as specified in that section. Con Ed contends, however, that its claims arise, and that the court, therefore, has subject matter jurisdiction, under section 113(f)(3)(B). We disagree, but hold that subject matter jurisdiction exists pursuant to section 107(a).

*B. Subject Matter Jurisdiction Does Not Exist Under Section 113(f)(3)(B)*

Con Ed argues that its Voluntary Cleanup Agreement with the Department constitutes a section 113(f)(3)(B) administrative settlement, that it has, as a result, "resolved its liability to ... a State ... in an administrative or judicially approved settlement," 42 U.S.C. § 9613(f)(3)(B), and that it should be permitted to pursue a cause of action under this provision.

We read section 113(f)(3)(B) to create a contribution right only when liability for CERCLA claims, rather than some broader category of legal claims, is resolved. This seems clear because resolution of liability for "response action[s]" is a prerequisite to a section 113(f)(3)(B) suit—and a "response action" is a *CERCLA*-specific term describing an action to

---

**5.** CERCLA section 106 states that when the President determines that "an imminent and substantial endangerment" to the public or the environment exists, the United States may "secure such relief as may be necessary to abate such danger or threat," and grants the federal district courts jurisdiction to grant such relief. 42 U.S.C. § 9606(a).

clean up a site or minimize the release of contaminants in the future.[6] Moreover, the legislative history of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), which enacted section 113, confirms this reading. The report of the House Committee on Energy and Commerce accompanying SARA states that section 113 "clarifies and confirms the right of a person held jointly and severally liable *under CERCLA* to seek contribution from other potentially liable parties." H.R.Rep. No. 99–253(I), at 79 (1985) (emphasis added). The report of the Senate Environment and Public Works Committee contains similar language. *See* S. Rep. 99–11, at 44 (1985). This history makes no mention of any intent to meddle with the contribution rules governing settlement of non-CERCLA claims. Accordingly, we believe section 113(f)(3)(B) does not permit contribution actions based on the resolution of liability for state law—but not CERCLA—claims. *See W.R. Grace & Co. v. Zotos Int'l, Inc.*, 2005 WL 1076117 (W.D.N.Y. May 3, 2005), 2005 U.S. Dist. LEXIS 8755, at \*23 ("Just as a party must be sued under CERCLA before it can maintain a section 113(f)(1) contribution claim, it must settle CERCLA liability before it can maintain a claim under section 113(f)(3).").

The operative question in deciding whether Con Ed's claims arise under section 113(f)(3)(B), then, is whether Con Ed resolved its CERCLA liability before bringing suit against UGI.

In the Voluntary Cleanup Agreement, the Department promised that if Con Ed cleaned up the properties specified in the agreement according to the agreement's terms, the Department would furnish Con Ed with a Release and Covenant Not to Sue. The Release and Covenant Not to Sue states that the Department "releases, covenants not to sue, and shall forebear from bringing any action, proceeding, or suit pursuant to the [New York] Environmental Conservation Law, the Navigation Law or the State Finance Law, and from referring to the Attorney General any claim for recovery of costs incurred by the Department ... for the further investigation and remediation of the Site, based upon the release or threatened release of Covered Contamination." This language makes clear, contrary to Con Ed's contentions, that the only liability that might some day be resolved under the Voluntary Cleanup Agreement is liability for state law—not CERCLA—claims.[7]

To be sure, the Voluntary Cleanup Agreement does refer to CERCLA in its "Reservation of Rights" section. There, the agreement states:

> Except for the Department's right to take any investigatory or remedial ac-

---

**6.** CERCLA defines the term "response" to mean "remove, removal, remedy, and remedial action" and all "enforcement activities related thereto." 42 U.S.C. § 9601(25). "The terms 'remove' or 'removal' means [*inter alia*] the cleanup or removal of released hazardous substances from the environment." *Id.* § 9601(23). The terms "remedy" or "remedial action" mean *inter alia* "those actions consistent with permanent remedy taken instead of or in addition to removal actions ... to prevent or minimize the release of hazardous substances." *Id.* § 9601(24).

We also note that the term "response action" is used throughout the statute. *See,*

*e.g., id.* §§ 9601(20)(E)(ii)(II), 9601(22), 9605(10), 9607(1)(2)(A).

**7.** At oral argument, Con Ed argued that even if the releases from liability under the Environmental Conservation Law, the Navigation Law, and the State Finance Law do not serve to release Con Ed from CERCLA liability, the more general promise not to refer claims for recovery of costs to the state's Attorney General does. The promise not to refer does nothing, however, to resolve Con Ed's liability for CERCLA claims.

tion deemed necessary as a result of a significant threat resulting from the Existing Contamination or to exercise summary abatement powers, the Department shall not take any enforcement action under [Environmental Conservation Law] Article 27, Title 13, under CERCLA, under the [Navigation Law], or under comparable statutory or common law theories of remedial liability with respect to the Existing Contamination, to the extent that such contamination is being addressed under the Agreement, against Volunteer or Volunteer's grantees, successors or assigns during the implementation of this Agreement, provided such party is in compliance with the terms and provisions of this Agreement, including without limitation the requirements of all Work Plans and amendments thereto.

However, this language cannot be construed to have resolved Con Ed's CERCLA liability. In fact, the exception enunciated at the beginning of this section of the agreement—which reserves the Department's right to take action under CERCLA "deemed necessary as a result of a significant threat resulting from the Existing Contamination or to exercise summary abatement powers"—leaves open the possibility that the Department might still seek to hold Con Ed liable under CERCLA. Moreover, to the extent that this language affords Con Ed any protection at all, that protection only lasts "during the implementation of this Agreement," i.e., while Con Ed is cleaning up the designated sites. Once the cleanup is completed, the Department will apparently regain the

rights relinquished in this section of the agreement, and grant Con Ed only the releases specified in the Release and Covenant Not to Sue. This language, therefore, does not in any way suggest that Con Ed resolved its liability to the Department under CERCLA.

For these reasons, we conclude that Con Ed may not pursue its action under section 113(f)(3)(B).

## C. Subject Matter Jurisdiction Does Exist Under Section 107(a)

■ We believe, however, that Con Ed may pursue its suit under section 107(a) because, in light of *Cooper Industries,* Con Ed's costs to clean up the sites of the Westchester Plants are "costs of response" within the meaning of that section.

After CERCLA's enactment in 1980 but before section 113(f)(1) was enacted, certain courts held that section 107(a) permitted certain private parties that, if sued, would be held liable under section 107(a)— often called "potentially responsible persons," or "PRPs"—to sue other parties to recover response costs incurred voluntarily.[8] *See Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 890–92 (9th Cir. 1986); *Pinole Point Props., Inc. v. Bethlehem Steel Corp.,* 596 F.Supp. 283, 290–91 (N.D.Cal.1984); *City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135, 1143 (E.D.Pa.1982). Section 107(a) does not, however, grant to parties against whom liability has been imposed any express right to sue other parties for contribution, which *Black's* defines as "[t]he right that gives one of several persons who

8. This opinion generally eschews the terms "potentially responsible person" and "PRP," which do not appear anywhere in the text of either CERCLA section 107 or section 113(f). The terms strike us as vague and imprecise because, when no action has been filed nor fact-finding conducted, *any* person is *conceiv-*

*ably* a responsible party under CERCLA. Moreover, we believe the term may be read to confer on a party that has not been held liable a legal status that it should not bear. We believe our alternative designation—a party that, if sued, would be held liable under section 107(a)—is more precise.

are liable on a common debt the ability to recover ratably from each of the others." *Black's Law Dictionary* 352 (8th ed.2004); *see also United Techs. Corp. v. Browning–Ferris Indus.*, 33 F.3d 96, 99 (1st Cir.1994) (defining contribution as "a claim by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make.") (internal quotation marks and citation omitted). Despite the omission of express contribution language, certain courts had held, before the enactment of section 113(f)(1), that CERCLA did in fact establish contribution rights. *See Sand Springs Home v. Interplastic Corp.*, 670 F.Supp. 913, 916–17 (N.D.Okla.1987) (holding that a CERCLA contribution right existed as a matter of federal common law); *United States v. New Castle County*, 642 F.Supp. 1258, 1262–69 (D.Del.1986) (same); *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 227–29 (W.D.Mo.1985) (holding that a CERCLA contribution right was implied in the statute's language). *But see United States v. Westinghouse Elec. Corp.*, 1983 WL 160587 (S.D.Ind. June 29, 1983), 1983 U.S. Dist. LEXIS 15850, at *9–*14 (declining to find a CERCLA contribution right).

Congress amended CERCLA when it passed SARA in 1986. *See generally* Pub.L. No. 99–499, 100 Stat. 1613. That legislation enacted section 113(f)(1), which, as described *supra*, creates an express cause of action for contribution. 42 U.S.C. § 9613(f)(1).

After section 113(f)(1)'s enactment, this circuit considered the relationship between section 107(a) and section 113(f)(1) in *Bedford Affiliates v. Sills*, 156 F.3d 416 (2d Cir.1998). In that case, negotiations between the plaintiff Bedford and the Department had culminated in two consent orders pursuant to which Bedford agreed to clean up contamination at a site it owned. *Id.* at 421. Bedford then sought recovery in the district court under both section 107(a) and section 113(f)(1). *Id.* at 422. The district court denied Bedford's section 107(a) claim but ruled that it was entitled to contribution under section 113(f)(1). *Id.* In equitably apportioning responsibility for the response costs, the district court found that Bedford was liable for five percent of those costs based on its ownership of the contaminated site and was thus limited to recovering only ninety-five percent of what it was seeking. *Id.* On appeal, Bedford challenged the district court's ruling that it was not entitled to proceed under section 107(a), and, importantly, it argued that it should be able to recover one hundred percent of its costs. *Id.* at 423.

This court observed that "[t]o bring a derivative action to recoup the portion of costs exceeding a potentially responsible person's equitable share of the overall liability ... is a quintessential claim for contribution, where a party seeks to apportion liability for an injury for which it is also directly liable." *Id.* at 424. Concluding that CERCLA § 113(f) "plainly governs such contribution actions," this court reasoned that the plaintiff "could not pursue a § 107(a) cost recovery claim against [the defendants] due to its status as a potentially responsible person." *Id.* at 423–24. The court observed that section 113(f)(1) has a three-year statute of limitations, whereas section 107(a) has a six-year statute of limitations, and added that "[w]ere we to permit a potentially responsible person to elect recovery under either § 107(a) or § 113(f)(1), § 113(f)(1) would be rendered meaningless," because "[a] recovering liable party would readily abandon a § 113(f)(1) suit in favor of the substantially more generous provisions of § 107(a)." *Id.* at 424. Thus, in *Bedford Affiliates*, the court proceeded to analyze the plaintiff's

claim only as one for contribution under section 113(f)(1). *Id.* at 425, 427–30.

Con Ed appears willing to accept that *Bedford Affiliates* stands for the proposition that section 107(a) may never provide a right of action for a party that, if sued, would be held liable under that section. We disagree, concluding that the facts of *Bedford Affiliates* differ from the case before us in a significant way. Before we explain that difference—and the reason why we need not revisit *Bedford Affiliates*'s section 107(a) holding—we lay out our own understanding of how, in light of *Cooper Industries*, section 107(a) applies to the facts of this case.

Following the enactment of section 113(f), some courts concluded that even though any party could seek reimbursement for costs under section 107(a), actions by parties that might themselves be liable under section 107(a) were "necessarily actions for contribution, and [were] therefore governed by the mechanisms set forth in § 113(f)." *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 350 (6th Cir.1998). *See also Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1302 (9th Cir.1997) ("[W]hile § 107 created the right of contribution, the 'machinery' of § 113 governs and regulates such actions, providing the details and explicit recognition that were missing from the text of § 107.").

In *Cooper Industries*, however, the Supreme Court expressly stated that the section 107(a) cost recovery remedy and the section 113(f)(1) contribution remedy, though "similar at a general level in that they both allow private parties to recoup costs from other private parties," are "clearly distinct." *Id.* at 582 n. 3. Moreover, the Court held in *Cooper Industries* that a section 113(f)(1) action is only available during or following a specified civil action. *Cooper Industries*, 125 S.Ct. at 583. This holding impels us to conclude that it no longer makes sense to view section 113(f)(1) as the means by which the section 107(a) cost recovery remedy is effected by parties that would themselves be liable if sued under section 107(a). Each of those sections, 107(a) and 113(f)(1), embodies a mechanism for cost recovery available to persons in different procedural circumstances.

Given that section 107(a) is distinct and independent from section 113(f)(1), and that section 113(f)(1)'s remedies are not available to a person in the absence of a civil action as specified in that section, determining whether a party in Con Ed's circumstances may sue under section 107(a) is easily resolved based on that section's plain language. Section 107(a) makes parties liable for the government's remedial and removal costs and for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). The only questions we must answer are whether Con Ed is a "person" and whether it has incurred "costs of response." We have no doubt that Con Ed is a "person" under CERCLA because it is a "firm" or "corporation" within the meaning of the act. 42 U.S.C. § 9601(21). Moreover, Con Ed has incurred and is incurring "costs of response," in that it is incurring costs of "removal" and "remedial action," § 9601(25), at the sites of the Westchester Plants, and those costs were not imposed on Con Ed as the result of an administrative or court order or judgment.

Unlike some other courts, we find no basis for reading into this language a distinction between so-called "innocent" parties and parties that, if sued, would be held liable under section 107(a). *See, e.g., United Techs. Corp.*, 33 F.3d at 100 ("[I]t is sensible to assume that Congress intended

only innocent parties—not parties who were themselves liable—to be permitted to recoup the whole of their expenditures."). Section 107(a) makes its cost recovery remedy available, in quite simple language, to *any* person that has incurred necessary costs of response, and nowhere does the plain language of section 107(a) require that the party seeking necessary costs of response be innocent of wrongdoing.[9]

Moreover, we believe we would be impermissibly discouraging voluntary cleanup were we to read section 107(a) to preclude parties that, if sued, would be held liable under section 107(a) from recovering necessary response costs. Were this economic disincentive in place, such parties would likely wait until they are sued to commence cleaning up any site for which they are not exclusively responsible because of their inability to be reimbursed for cleanup expenditures in the absence of a suit. *See Syms v. Olin Corp.*, 408 F.3d 95, 106 n. 8 (2d Cir.2005) (observing that "the combination of *Cooper Industries* and

*Bedford Affiliates* ... would create a perverse incentive for PRPs to wait until they are sued before incurring response costs").[10] This would undercut one of CERCLA's main goals, " 'encourag[ing] private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others.' " *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 n. 13, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994) (quoting *FMC Corp. v. Aero Indus., Inc.*, 998 F.2d 842, 847 (1993)).

For these reasons, we hold that section 107(a) permits a party that has not been sued or made to participate in an administrative proceeding, but that, if sued, would be held liable under section 107(a), to recover necessary response costs incurred voluntarily, not under a court or administrative order or judgment.[11]

This holding does not require us to revisit *Bedford Affiliates* because of critical distinctions between that case and this

9. Some might argue that a person who, if sued, would be partly liable for necessary costs of response may be unjustly enriched if allowed under section 107(a) to recover 100 percent of its costs from other persons. This fear seems misplaced. While we express no opinion as to the efficacy of such a procedure, there appears to be no bar precluding a person sued under section 107(a) from bringing a counterclaim under section 113(f)(1) for offsetting contribution against the plaintiff volunteer who, if sued, would be liable under section 107(a). *See, e.g., Blasland, Bouck & Lee v. City of N. Miami*, 283 F.3d 1286, 1292 (11th Cir.2002) (observing that plaintiff, an engineering firm, had sued City asserting CERCLA claims, and City had counterclaimed for CERCLA contribution); *Dent v. Beazer Materials & Servs.*, 156 F.3d 523, 527 (4th Cir.1998) (stating that the plaintiff had filed claims under section 107(a) and section 113(f)(1), and that the defendant had filed "generally corresponding CERCLA counterclaims"); *Redwing Carriers v. Saraland Apts.*, 94 F.3d 1489, 1495 (11th Cir.1996) (stating

that the plaintiff had sued the defendants under sections 107(a) and 113(f), and the defendants had counterclaimed under section 113(f)).

10. In *Syms*, this court faced the same question we face here: the effect of *Cooper Industries* on section 107(a). In that case, *Cooper Industries* had been issued after the court had heard oral argument, and the court elected not to decide the issue but rather to permit the district court to consider the issue on remand. *Id.* at 106–07. Here, where *Cooper Industries* was issued well before oral argument, and the parties submitted, at the court's request, briefs on this purely legal issue, remand is unnecessary and would only delay resolution of this matter.

11. This is, of course, consistent with the view that courts took of section 107(a) before section 113(f)(1) was enacted. *See Wickland*, 792 F.2d at 891–92, *Pinole Point Props., Inc.*, 596 F.Supp. at 290–91, *Stepan Chemical Co.*, 544 F.Supp. at 1143.

one.[12]

■ First, unlike in this case where there has been no adjudication of Con Ed's liability for response costs and no administrative or judicially approved settlement requiring Con Ed to incur those expenses, in *Bedford Affiliates*, the plaintiff had entered into two consent orders with the Department, pursuant to which the plaintiff began cleanup and remedial action. *Bedford Affiliates*, 156 F.3d at 421. "An administrative consent order is a final agency order which is reviewable as if it were the product of a hearing.'" *A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65 n. 12 (2d Cir.2005) (quoting 2 Charles H. Koch, Jr., Administrative Law and Practice § 5.43, at 155 (2d ed.1997)).

It may be that when a party expends funds for cleanup solely due to the imposition of liability through a final administrative order, it has not, in fact, incurred

"necessary costs of response" within the meaning of section 107(a). As the District Court for the Middle District of North Carolina stated in *United States v. Taylor*, 909 F.Supp. 355 (M.D.N.C.1995), when a party "does not conduct its own cleanup, it has not incurred recovery costs." *Id.* at 365. If a party expends funds out of obligation under an administrative or court order or final judgment, its liability may be "similar to that of a tort feasor's liability for the doctor's bills of the injured party. Payment by the tort feasor does not mean it has incurred doctor's bills itself." *Id.; see* Michael V. Hernandez, *Cost Recovery or Contribution?: Resolving the Controversy Over CERCLA Claims Brought by Potentially Responsible Parties*, 21 Harv. Envtl. L.Rev. 83, 95–97 (1997) (suggesting that section 107(a) does not expressly authorize suits seeking costs of liability imposed in a prior recovery action or settlement).[13]

**12.** Generally, "this court is bound by a decision of a prior panel unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court *en banc*." *BankBoston, N.A. v. Sokolowski*, 205 F.3d 532, 534–35 (2d Cir.2000) (quotation marks and citation omitted). *Bedford Affiliates* 's implicit holding that a plaintiff may proceed under section 113(f)(1) in the absence of a section 106 or 107(a) action has apparently been superseded by *Cooper Industries*. We have also observed that we may depart from a prior decision when it merely "has been called into question by an intervening United States Supreme Court decision." *Meacham v. Knolls Atomic Power Lab.*, 381 F.3d 56, 69 (2d Cir. 2004) (quotation marks and citation omitted) (vacated on other grounds); *see also* Hon. Jon O. Newman, *Foreword: In Banc Practices in the Second Circuit: The Virtues of Restraint*, 50 Brook. L.Rev. 365, 370 (1984) ("An in banc consideration has not been thought necessary, however, to discard a precedent eroded by an intervening decision of the Supreme Court."). *Cooper Industries* may call into question the rationale of *Bedford Affiliates* 's section 107(a) holding. Certainly, it no longer makes sense to argue that permitting a potentially responsible person to sue under

section 107(a) would render section 113(f)(1)'s statute of limitations meaningless because a party proceeding in the absence of a civil action no longer has the option of suing under section 113(f)(1). *See Bedford Affiliates*, 156 F.3d at 424. Consequently, it might be argued that, in the wake of *Cooper Industries*, Bedford Affiliates's section 107(a) holding can no longer stand. We need only make this determination, however, if our section 107(a) holding conflicts with *Bedford Affiliates* 's section 107(a) holding. Because it does not, we decline to answer the question whether a three-judge panel of this court may depart from *Bedford Affiliates* 's section 107(a) holding.

**13.** We note, however, that even decisions stating that the imposition of liability may create expenditures that are not costs of response have confined their holding to liability imposed through court proceedings. *Taylor* held that a party subjected to a court-approved settlement or judgment was limited to the contribution remedy, but also stated that a party implementing response or remedial activity under an administrative order incurs "necessary costs of response" under section

Second, the *Bedford Affiliates* plaintiff, having agreed to the consent order, put the extent of its liability at issue by proceeding to seek recovery under both sections 107(a) and 113(f)(1). As noted, under section 113(f), the district court found that the plaintiff was partially liable for the costs of response. To rule that in those circumstances Bedford could have proceeded under section 107(a) to seek recovery of one hundred percent of the costs, this court would have had to hold in substance that a party already adjudicated liable for a portion of the costs of response under section 113(f)(1) could circumvent that section by recovering under section 107(a) that portion of the costs attributed to it by the adjudication. That is, having found that the district court did not abuse its discretion in attributing to Bedford responsibility for five percent of the necessary response costs, the court did not have to reach the question of whether Bedford could proceed under section 107(a) to recoup those costs.

Here, there have been no consent orders and no proceeding apportioning necessary costs of response to Con Ed, and these differences distinguish this case from *Bedford Affiliates*. In sum, we read *Bedford Affiliates* to hold that a party that has incurred or is incurring expenditures under a consent order with a government agency and has been found partially liable under section 113(f)(1) may not seek to recoup those expenditures under section 107(a). Our holding here—that a party that has not been sued or made to participate in an administrative proceeding, but, if sued, would itself be liable under section

107(a), may still recover necessary response costs incurred voluntarily, not under a court or administrative order or judgment—does not conflict with *Bedford Affiliates*.

We are, of course, cognizant that the Supreme Court in *Cooper Industries* declined to resolve whether a party that would itself be liable under section 107(a) may bring a section 107(a) cost recovery action. *See Cooper Industries*, 125 S.Ct. at 584. *But see id.* at 588 (Ginsburg, J., dissenting) (urging the court to permit such parties to proceed under section 107(a)). This fact does not weigh on one side or the other in our analysis here. In justifying its refusal to resolve the question, the Court cited a long list of circuit court cases—including *Bedford Affiliates*—stating that so-called PRPs could not pursue a section 107(a) action. *See id.* at 585. All but one of those cases are inapposite for the reason described *supra:* they considered plaintiffs that had either been held liable—or, because they had been sued, might imminently be held liable—under an administrative or court order or judgment. *See Centerior Serv.*, 153 F.3d at 346 (stating that "the EPA issued a unilateral Administrative Order to the plaintiffs"); *Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R.*, 142 F.3d 769, 773 (4th Cir.1998) (stating that the plaintiff "began response activities at the site pursuant to state and federal EPA orders"); *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1119 (3d Cir.1997) (stating that the United States had filed suit against the plaintiff); *Redwing Carriers, Inc. v. Saraland Apart-*

---

107(a). *Id.* at 363; *see New Castle County,* 642 F.Supp. at 1262 ("[I]t is not clear that once a responsible party *has been sued* his monetary expenditures to abate an environmental hazard qualify as 'necessary costs of response' under the Act.") (emphasis added); Hernandez, *supra,* at 124 (arguing that a par-

ty that cleans up a site under an administrative order should have both a section 107(a) cost recovery claim and a contribution claim). If expenditures under an administrative order *are* costs of response, *Bedford Affiliates* would apparently require revisiting. We need not and do not decide these questions here.

*ments,* 94 F.3d 1489, 1495 (11th Cir.1996) (stating that the plaintiff had entered into two consent orders with the EPA); *United States v. Colorado & E. R.R. Co.,* 50 F.3d 1530, 1533 (10th Cir.1995) (stating that the party seeking to assert section 107(a) claims against third-party defendants had been sued by the EPA); *United Techs. Corp. v. Browning–Ferris Inc.,* 1993 WL 660007 (D.Me. May 27, 1993), 1993 U.S. Dist. LEXIS 19160, at *2–*3 (stating that the United States had filed a civil action under CERCLA against a predecessor of the plaintiff in *United Technologies Corp. v. Browning–Ferris Industries, Inc.,* 33 F.3d 96 (1st Cir.1994), another case cited by the Supreme Court in *Cooper Industries* ). The only other case cited in this vein in *Cooper Industries* is *Pinal Creek Group v. Newmont Mining Corp.,* 118 F.3d 1298 (9th Cir.1997). We simply and respectfully disagree with the Ninth Circuit's holding in *Pinal Creek* that a party that has incurred response costs voluntarily and, if sued, would be held liable under section 107(a), may only bring a contribution claim governed by section 113(f)(1). *See id.* at 1301–06. In particular, *Cooper Industries* is at odds with *Pinal Creek Group* 's view that "while § 107 created the right of contribution, the 'machinery' of § 113 governs and regulates such actions, providing the details and explicit recognition that were missing from the text of § 107." *Id.* at 1302. According to *Cooper Industries,* the two remedies are "clearly distinct." 125 S.Ct. at 582 n. 3.

Consequently, we conclude that a party in Con Ed's circumstances may pursue a cost recovery action under section 107(a).

### D. Con Ed's Waiver and Failure–to–Plead Arguments

UGI argues that Con Ed cannot pursue any claim other than one under section 113(f)(1) because 1) Con Ed has waived any argument that an alternative provision might support its suit, and 2) Con Ed failed to assert any basis other than section 113(f)(1) in its First Amended Complaint.

As to the first assertion, we have discretion to consider an argument not passed on below where, as here, " 'the issue is purely legal and there is no need for additional fact-finding.' " *Baker v. Dorfman,* 239 F.3d 415, 420–21 (2d Cir. 2000) (quoting *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 302 (2d Cir. 1996)). UGI's suggestion that Con Ed waived an argument supporting subject matter jurisdiction is particularly unpersuasive given that UGI itself declined to press the argument that the court *lacked* subject matter jurisdiction over Con Ed's claim. UGI, in its appellate opposition brief filed on September 10, 2004, mentioned *Cooper Industries,* which was then pending on appeal to the Supreme Court, but "assumed *arguendo* " that the court had subject matter jurisdiction despite Con Ed's not having been sued under section 106 or section 107(a). Apparently hoping that this court would simply affirm the district court summary judgment grant on the merits, UGI attempted to hold its subject matter jurisdiction argument in reserve. However, "[t]he absence of [subject matter] jurisdiction is non-waivable; before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction." *Wynn v. AC Rochester,* 273 F.3d 153, 157 (2d Cir.2001). Even after *Cooper Industries* was issued in December of last year, UGI did not submit additional briefing on this topic for a period of more than four months, only advancing its subject matter jurisdiction argument when urged by this court. Having failed to press its argument against subject matter jurisdiction without court prodding, UGI cannot now argue

that we should refuse based on waiver to consider an argument *in favor* of jurisdiction.

UGI's second argument also lacks merit. As this court observed in *Albert v. Carovano,* 851 F.2d 561 (2d Cir.1988), "[t]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim," because "[f]actual allegations alone are what matters." *Id.* at 571 n. 3; *see also Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 45–46 (2d Cir.1997) (citing *Albert*). Here, the First Amended Complaint alleges that Con Ed has incurred and continues to incur cleanup costs, which were incurred voluntarily and not as a result of being held liable under an administrative or court order or judgment.[14] As we have explained, this suffices for Con Ed to proceed under section 107(a).

## CONCLUSION

For these reasons, we conclude that this action arises under CERCLA section 107(a), and that subject matter jurisdiction exists. For the reasons discussed in the accompanying summary order, we affirm in part and reverse in part the district court's grant of summary judgment and remand the case for further proceedings.

---

**14.** Indeed, the voluntariness of the costs that Con Ed has incurred is demonstrated by the fact that the First Amended Complaint identifies these costs, even though it was filed more than six months *before* Con Ed entered into the Voluntary Cleanup Agreement.