SLOVITER, Circuit Judge,
dissenting.
Judge Ambro has written a fine opinion in support of the majority’s position that plaintiff DuPont does not have a right to contribution from the United States for its voluntary cleanup of a site that was polluted by the United States as well as by DuPont. I reach a conclusion different from that reached by the majority and write so that this view can be considered along with that of the majority. Because Judge Ambro’s opinion fully sets forth the legal background, I make every effort to avoid repetition.
The majority concludes that DuPont cannot maintain. this action against the United States for contribution for cleanup costs under CERCLA § 107 because of our decisions in New Castle County v. Halliburton NUS Corp., 111 F.3d 1116 (3d Cir.1997), and In re Reading Co., 115 F.3d 1111 (3d Cir.1997). Although this court adheres strictly to our precedents, we have made clear that those precedents may be reevaluated when there has been intervening authority. See George Harms Constr. Co. v. Chao, 371 F.3d 156, 161 (3d Cir.2004) (“We recognize that we may reevaluate a precedent in light of intervening authority even without en banc consideration.”); Reich v. D.M. Sabia Co., 90 F.3d 854, 858 (3d Cir.1996) (“Although a panel of this court is bound- by, and lacks authority to overrule, a published decision of a prior panel ..., a panel may reevaluate a precedent in light of intervening authority[.]”).
Such reevaluation of precedent is appropriate here even though, as the majority correctly notes, we must be particularly cautious in revisiting cases involving questions of statutory interpretation. Indeed, the Supreme Court has noted that in certain circumstances courts may appropriately overrule statutory precedents. It has explained that in “cases where statutory precedents have been overruled, the primary reason for the Court’s shift in position has been the intervening development of the law, through either the growth of judicial doctrine or further action taken by Congress. Where such changes have removed or weakened the conceptual underpinnings from the prior decision, or where the later law has rendered the decision irreconcilable with competing legal doctrines or policies, the Court has not hesitated to overrule an earlier decision.” Patterson v. McLean Credit Union, 491 U.S. 164, 173, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (citations omitted).
The Supreme Court’s decision in Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004), is such intervening authority. It should impel us to reevaluate our precedent because Cooper Industries weakens the conceptual underpinnings of our decisions in Reading and New Castle County. For that reason, and because our holdings in Reading and New Castle County cannot be reconciled with the policies Congress sought to encourage when it enacted CERCLA, I believe this court can and should reconsider those opinions.
*546 There is nothing in the relevant language of § 107 that compels the result the majority reaches. Section 107 states that various parties, including the owner or operator of a facility, may be responsible for “any ... necessary costs of response in-, curred by any other person consistent with the national contingency plan,” § 107(a)(4)(B), and provides a cause of action to parties that incur cleanup costs but have not themselves been sued under § 106 or § 107.[34] For years after the 1980 enactment of CERCLA, district courts almost unanimously found that § 107 contained an implied cause of action for contribution. See, e.g., United States v. New Castle County, 642 F.Supp. 1258, 1265-69 (D.Del.1986) (holding that contribution right arises under federal common law); Colorado v. ASARCO, Inc., 608 F.Supp. 1484, 1489-91 (D.Colo.1985) (same); Wehner v. Syntex Agribusiness, Inc., 616 F.Supp. 27, 31 (E.D.Mo.1985) (holding that contribution right is implied from language of § 107(e)(2)). With the enactment of § 113, the courts turned to that section rather than to § 107 to provide the cause of action.
In New Castle County, this court stated that § 113 provided a “potentially responsible person[] with the appropriate vehicle” to “recoup that portion of its expenditures which exceeds its fair share of the overall liability.” 111 F.3d at 1122. We further held that “a section 107 action brought for recovery of costs may be brought only by innocent parties that have undertaken clean-ups.” Id. at 1120. Similarly, in Reading, we held that a potentially responsible party may not seek contribution under § 107(a)(4)(B). In fact, we stated “ § 113(f)(1) specifically permits an action for contribution to be brought in the absence of civil action under section 107.” 115 F.3d at 1120 (internal punctuation and quotation marks omitted).
The trend toward application of § 113 was halted by the Supreme Court’s decision in Cooper Industries, where the Court held that the plain language of § 113(f)(1) does not allow liable parties to bring contribution actions unless and until a related civil action is brought against them under either § 106 or § 107. The Court reserved judgment on the question whether liable parties who are not subject to an action under § 106 or § 107 may instead seek relief under § 107(a)(4)(B).
Cooper Industries clearly undermined our opinions in Reading and New Castle County. In those cases, we assumed that all potentially responsible parties — those whose responsibility had been adjudicated and those who voluntarily admitted their responsibility' — fell into the same category of “potentially responsible parties” who could recoup losses by bringing suit pursuant to § 113(f). The Supreme Court’s decision in Cooper Industries established that our understanding of the category “potentially responsible parties” was incorrect. Cooper Industries holds that a party who has in fact been held responsible (via adjudication or settlement with the EPA) *547 may bring an action under § 113(f), while a party who admits responsibility but whose responsibility has not been established may not. Cooper Industries highlights the fact that the term “potentially responsible party” is “vague and imprecise because, when no action has been filed nor fact-finding conducted, any person is conceivably a responsible party under CERCLA.” Consolidated Edison Co. of New York v. UGI Utilities, Inc., 423 F.3d 90, 97 n. 8 (2d Cir.2005), petition for cert. filed, 74 U.S.L.W. 3600 (U.S. Apr. 14, 2006) (No. 05-1323).[35]
In addition, Reading and New Castle County are clearly factually distinguishable from the situation before us. In New Castle County, plaintiffs already had been sued by the Government and then brought an action against other potentially responsible parties to recover response costs under § 107(a)(4)(B). This court held that plaintiffs could not assert a cause of action under § 107 and restricted them to making a claim for contribution under § 113(f). See 111 F.3d at 1116. Similarly, in Reading, the plaintiff had already been sued under § 107. See 115 F.3d at 1116. In the instant case, DuPont has not been ordered to undertake remedial action. Rather, it voluntarily cleaned up numerous hazardous sights. Any statements this court made regarding the ability of parties against whom § 106 or § 107 actions had not been brought to sue under § 107 or § 113 were not necessary to answer the questions presented by those cases and need not govern our analysis in this case.
Two of our sister circuits have recently considered the same issue presented here and both have decided, contrary to the majority, that section 107(a) can be used by a responsible party to seek contribution from another responsible party. In Consolidated Edison, the Court of Appeals for the Second Circuit unanimously held,
We believe ... that Con Ed may pursue its suit under section 107(a) because, in light of Cooper Industries, Con Ed’s costs to clean up the sites of the West-chester Plants are “costs of response” within the meaning of that section.
423 F.3d at 97.
The Second Circuit, like this court, had held, before the Cooper Industries decision, that CERCLA section' 113(f) governs contribution actions and that the plaintiff could not pursue a section 107(a) cost recovery claim against the defendants. Bedford Affiliates v. Sills, 156 F.3d 416 (2d Cir.1998). The Supreme Court’s decision in Cooper Industries convinced the Second Circuit to change its view. As the court explained in Consolidated Edison:
[The Cooper Industries ] decision impels Us to conclude that it no longer makes sense to view section 113(f)(1) as the means by which section 107(a) cost recovery remedy is effected by parties that would themselves be liable if sued under section 107(a).
423 F.3d at 99. The court further stated that it “would be impermissibly discouraging voluntary cleanup were we to read section 107(a) to preclude parties that, if sued, would be held liable under section *548 107(a) from recovering necessary response costs.” Id. at 100.
The court thus concluded, “that section 107 permits a party that has not been sued or made to participate in an administrative proceeding, but that if sued, would be held liable under section 107(a), to recover necessary response costs incurred voluntarily, not under a court or administrative order or judgment.” Id.
Just this month, the Court of Appeals for the Eighth Circuit, again unanimously, reached a similar conclusion. In Atlantic Research Corp. v. United States, the court held that: “[A] private party which voluntarily undertakes a cleanup for which it may be held liable, thus barring it from contribution under CERCLA’s § 113, may pursue an action for direct recovery or contribution under § 107, against another liable party.” 459 F.3d 827, 837 (8th Cir.2006).
Atlantic Research, the plaintiff in the Eighth Circuit decision, was in a position almost identical to that of DuPont here in that it sought to recover contribution for cleanup from the United States for cleanup services it performed at a facility where it retrofitted rocket monitors for the United States. The court, like the Second Circuit in Bedford Affiliates, had held in Dico Inc. v. Amoco Oil Co., 340 F.3d 525, 531 (8th Cir.2003), that a liable party could not bring an action under section 107. The Eighth Circuit, like the Second Circuit, reconsidered that earlier holding in light of the decision in Cooper Industries and did an about face. I believe that this court’s earlier decisions in New Castle County and In re Reading Co. are similarly superseded by the decision in Cooper Industries.
Both the Second and the Eighth Circuits’s decisions cited the Supreme Court’s decision in Key Tronic Corp. v. United States, 511 U.S. 809, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). In that case, which concerned attorney’s fees under CERCLA, the Supreme Court recognized that a potentially responsible party could seek recovery of response costs under § 107, but the Justices differed as to whether there was an express or implied cause of action. Justice Ginsburg, in her dissent in Cooper Industries, stated that every Member of the Court in Key Tronic agreed that a potentially responsible party which incurred necessary costs could recover those costs from another liable party in an action under § 107(a). Cooper Industries, 543 U.S. at 172, 125 S.Ct. 577. Significantly, the plaintiff in Key Tronic was a party responsible for polluting and was still permitted to bring suit under § 107. As the Court of Appeals for the Second Circuit recently stated, Cooper Industries and the text of § 107 clearly “impel[] us to conclude that it no longer makes sense to view section 113(f)(1) as the means by which the section 107(a) cost recovery remedy is effected by parties that would themselves be liable if sued under section 107(a).” Consolidated Edison, 423 F.3d at 99. Rather, § 107(a) and § 113(f)(1) embody mechanisms for cost recovery available to persons in different procedural postures. Id.
Contrary to the majority, I believe that permitting parties who voluntarily incur cleanup costs to bring suit under § 107 comports with the fundamental purposes of CERCLA. As this court noted in Horsehead Industries, Inc. v. Paramount Communications, Inc., 258 F.3d 132 (3d Cir.2001):
The purpose of CERCLA is “to assure that the current and future costs associated with hazardous waste facilities, including post-closure costs, will be adequately financed and, to the greatest extent possible, borne by the owners and operators of such facilities.”
Id. at 135 (quoting 42 U.S.C. § 9607(k)(6)(E)); see OHM Remediation Services v. Evans Cooperage Co., 116 F.3d *549 1574 (5th Cir.1997) (noting CERCLA’s broad, remedial purpose to facilitate prompt cleanup of hazardous waste sites and to shift costs of environmental response from taxpayers to parties who ben-efitted from wastes that caused harm); see also In re Tutu Water Wells CERCLA Litig., 326 F.3d 201, 206 (3d Cir.2003) (stating that CERCLA’s purpose is “making those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created”) (citation and quotation marks omitted).
Voluntary cleanups are vital to fulfilling CERCLA’s purpose. During deliberations on the SARA Amendments, Congress emphasized the importance of voluntary action, stating that “[voluntary cleanups are essential to a successful program for clean up of the Nation’s hazardous substance pollution problem.” H.R.Rep. No. 99-253, pt. 5, at 58 (1985), U.S.Code Cong. & Admin.News 1986 pp. 3124, 3181; see also 131 Cong. Rec. 24725, 24730 (1985) (statement of Sen. Domenici) (“The goal of CERCLA is to achieve effective and expedited cleanup of as many uncontrolled hazardous waste facilities as possible. One important component of the realistic strategy must be the encouragement of voluntary cleanup actions or funding without having the President relying on the panoply of administrative and judicial tools available.”).
The majority reads the legislative history of SARA as strongly indicating that Congress did not mean to encourage unsupervised voluntary cleanups, but rather cleanups within the bounds of settlement agreements. See Maj. Op. at IV.B.2(b). The majority notes that the EPA expressed serious doubts about the efficacy of voluntary cleanups by parties.[36] See Maj. Op. at IV.B.2(c). These assertions, part of a long and fractious legislative history, are not dispositive. Though supervised cleanups are to be encouraged wherever possible, they need not be encouraged at the expense of unsupervised cleanups. Section 107(a)(4)(B) holds a party liable for costs incurred in a cleanup (voluntary or otherwise) only insofar as those costs are “costs of response incurred by any other person consistent with the national contingency plan.” 42 U.S.C. 9607(a)(4)(B). A party that seeks contribution for costs incurred in a cleanup that does not comport with the national contingency plan is without recourse.[37]
The position urged by DuPont here is an alternative and equally effective, albeit voluntary, method of assuring cleanup in compliance with CERCLA. See Kotrous v. Goss-Jewett Co. of N. Cal., No. Civ. S02-1520, 2005 WL 1417152, at *3 (E.D.Cal. June 16, 2005) (holding that a potentially responsible party may maintain a claim for contribution under § 107(a)); Metro. Water Reclamation Dist. v. Lake River Corp., 365 F.Supp.2d 913, 918 (N.D.Ill.2005) (explaining that “although PRP’s are not explicitly named in § 107(a), there seems to be no reason why they would be excluded from the provision that allows recovery for any person”); Vine St. *550 LLC v. Keeling, 362 F.Supp.2d 754, 761-64 (D.Tex.2005) (holding that potentially responsible party could bring claim under § 107(a)); cf. Atl. Research Corp. v. United States, No. 02-CV-1199, 2005 U.S. Dist. LEXIS 20484, at *10 (W.D. Ark. June 1, 2005) (suggesting the Eighth Circuit revisit its precedents after noting “that the result ... is patently unfair to ARC, because it has voluntarily cleaned up environmental contamination, yet it is left without a CERCLA remedy against the United States, another PRP”).
As the majority itself notes, SARA was “not intended to preclude responsible parties from taking voluntary response actions outside a consent agreement.” Maj. Op. at IV.B.2(c). I am concerned that the effect of the majority’s opinion will be that parties will be reluctant to engage in voluntary cleanups for fear that they may not be able to obtain contribution. Spills that could be most efficaciously dealt with if cleaned up immediately will remain untouched while parties attempt to settle with the Government. This result is contrary to the purpose of CERCLA. Therefore, I respectfully dissent.

. In New Castle County, we stated only that .innocent parties may bring suit under § 107. Our imposition of the "innocent” standard on parties seeking to bring suit under § 107 is not based on the statutory text. Arguably, the "innocent” standard imposed by this and other circuits violates fundamental rules of statutory construction by imposing a requirement not evident on the statute's face. This court-created standard ignores the fact that § 107(a)(4)(B) plainly allows a private party plaintiff to be "any other person” besides the government, state, and Indian tribes and does not expressly exclude parties that may be responsible for a spill. Moreover, courts that adopt this standard narrowly interpret § 107 and ignore that CERCLA is a remedial statute, which courts are to construe liberally in order to achieve its intended purposes— namely the prompt cleanup of hazardous sites.

. The majority holds that our erroneous observation in Reading that " § 113(f)(1) specifically permits an action for contribution to be brought 'in the absence of a civil action under ... section [107],'” 115 F.3d at 1120, does not fatally undermine Reading’s holding. I respectfully disagree. Cooper Industries clearly establishes that § 113(f) did not, as we stated, ”replace[] the judicially created cause of action under § 107(a)(4)(B) to the extent that a party seeks contribution.” Reading, 115 F.3d at 1120. That judicially created cause of action was available to parties that had not been sued under § 106 or § 107. Our broad reading of § 113(f) in Reading is fundamentally at odds with the Supreme Court's understanding of § 113(f) in Cooper Industries.

. The EPA’s approach to voluntary cleanups has varied. The majority argues that the EPA was wary of such cleanups prior to the enactment of SARA. However, the EPA has also expressed concern that the position advocated by the United States and adopted by the Supreme Court in Cooper Industries could undermine EPA’s voluntary cleanup program by removing an incentive for liable parties to voluntarily clean up contaminated sites because it would make it more difficult to seek reimbursements. See Ruling on Superfund Costs May Boost Push for Supreme Court Review, Inside the EPA, Jan. 9, 2004, sec. 2, available at 2004 WLNR 70249.

. By the plain text of the statute, parties that fail to meet the national contingency plan standards cannot be reimbursed for such activities.