**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PNEUMO ABEX CORPORATION; WHITMAN
CORPORATION; CITY OF PORTSMOUTH,
VIRGINIA, a municipal corporation;
PORTSMOUTH REDEVELOPMENT AND
HOUSING AUTHORITY,
Plaintiffs-Appellees,

v.

HIGH POINT, THOMASVILLE AND DENTON
RAILROAD COMPANY,
Defendant-Appellant,

NORFOLK SOUTHERN RAILWAY COMPANY;
NORFOLK & WESTERN RAILWAY
COMPANY,
                                                     No. 97-1593
Defendants & Third Party
Plaintiffs-Appellants,

and

CSX CORPORATION; ERIE LACKAWANNA,
INCORPORATED; CONSOLIDATED RAIL
CORPORATION; GREENLEASE HOLDING
COMPANY; LAKE TERMINAL RAIL
COMPANY; NEW YORK, SUSQUEHANNA &
WESTERN RAILROAD COMPANY; USX
CORPORATION; JOHN C. HOLLAND, JR.;
CAMBRIA & INDIANA RAILROAD
COMPANY; FLORIDA EAST COAST
RAILWAY COMPANY,
Defendants,

CSX TRANSPORTATION, INCORPORATED; FLORIDA EAST COAST INDUSTRIES, INCORPORATED; FRUIT GROWERS EXPRESS COMPANY, INCORPORATED; PITTSBURGH & LAKE ERIE RAILROAD COMPANY, INCORPORATED; RICHMOND, FREDERICKSBURG & POTOMAC RAILROAD COMPANY, INCORPORATED; UNION RAILROAD COMPANY, INCORPORATED; BESSEMER AND LAKE ERIE RAILROAD COMPANY, INCORPORATED,
Defendants & Third Party Plaintiffs,

KAUFMAN & CANOLES, P.C.,
Party in Interest,

v.
THE RUNNYMEDE CORPORATION; HOLLAND INVESTMENT AND MANUFACTURING COMPANY, INCORPORATED; AMERICAN PREMIER UNDERWRITERS, INCORPORATED; WIMCO; WIMCO METALS, INCORPORATED; WILMAT HOLDINGS, INCORPORATED; TRIANGLE INDUSTRIES, INCORPORATED; ILLINOIS CENTRAL RAILROAD COMPANY,
Third Party Defendants.

VIRGINIA MANUFACTURERS ASSOCIATION; AMERICAN AUTOMOBILE MANUFACTURERS ASSOCIATION; INSTITUTE OF SCRAP RECYCLING INDUSTRIES, INCORPORATED,
Amici Curiae.

2

PNEUMO ABEX CORPORATION; WHITMAN
CORPORATION; CITY OF PORTSMOUTH,
VIRGINIA, a municipal corporation;
PORTSMOUTH REDEVELOPMENT AND
HOUSING AUTHORITY,
Plaintiffs-Appellees,

v.

CSX TRANSPORTATION, INCORPORATED;
FRUIT GROWERS EXPRESS COMPANY,
INCORPORATED,
Defendants & Third Party
Plaintiffs-Appellants,

and                                                                                   No. 97-1594

CSX CORPORATION; ERIE LACKAWANNA,
INCORPORATED; CONSOLIDATED RAIL
CORPORATION; GREENLEASE HOLDING
COMPANY; HIGH POINT,
THOMASVILLE AND DENTON RAILROAD
COMPANY; LAKE TERMINAL RAIL
COMPANY; NEW YORK, SUSQUEHANNA &
WESTERN RAILROAD COMPANY; USX
CORPORATION; JOHN C. HOLLAND, JR.;
CAMBRIA & INDIANA RAILROAD
COMPANY; FLORIDA EAST COAST
RAILWAY COMPANY,
Defendants,

3

FLORIDA EAST COAST INDUSTRIES,
INCORPORATED; NORFOLK SOUTHERN
RAILWAY COMPANY, NORFOLK &
WESTERN RAILWAY COMPANY;
PITTSBURGH & LAKE ERIE RAILROAD
COMPANY INCORPORATED; RICHMOND,
FREDERICKSBURG & POTOMAC RAILROAD
COMPANY, INCORPORATED; UNION
RAILROAD COMPANY, INCORPORATED;
BESSEMER AND LAKE ERIE RAILROAD
COMPANY, INCORPORATED,
Defendants & Third Party Plaintiffs,

KAUFMAN & CANOLES, P.C.,
Party in Interest,

v.

THE RUNNYMEDE CORPORATION;
HOLLAND INVESTMENT AND
MANUFACTURING COMPANY,
INCORPORATED; AMERICAN PREMIER
UNDERWRITERS, INCORPORATED; WIMCO;
WIMCO METALS, INCORPORATED; WILMAT
HOLDINGS, INCORPORATED; TRIANGLE
INDUSTRIES, INCORPORATED; ILLINOIS
CENTRAL RAILROAD COMPANY,
Third Party Defendants.

VIRGINIA MANUFACTURERS ASSOCIATION;
AMERICAN AUTOMOBILE MANUFACTURERS
ASSOCIATION; INSTITUTE OF SCRAP
RECYCLING INDUSTRIES, INCORPORATED,
Amici Curiae.

4

PNEUMO ABEX CORPORATION; WHITMAN
CORPORATION; CITY OF PORTSMOUTH,
VIRGINIA, a municipal corporation;
PORTSMOUTH REDEVELOPMENT AND
HOUSING AUTHORITY,
<u>Plaintiffs-Appellants,</u>

v.

HIGH POINT, THOMASVILLE AND DENTON
RAILROAD COMPANY,
<u>Defendant-Appellee,</u>

CSX TRANSPORTATION, INCORPORATED;
FRUIT GROWERS EXPRESS COMPANY,
INCORPORATED; NORFOLK SOUTHERN
RAILWAY COMPANY; NORFOLK &

WESTERN RAILWAY COMPANY,
<u>Defendants & Third Party</u>
<u>Plaintiffs-Appellees,</u>

and

CSX CORPORATION; ERIE LACKAWANNA,
INCORPORATED; CONSOLIDATED RAIL
CORPORATION; GREENLEASE HOLDING
COMPANY; LAKE TERMINAL RAIL
COMPANY; NEW YORK, SUSQUEHANNA &
WESTERN RAILROAD COMPANY; USX
CORPORATION; JOHN C. HOLLAND, JR.;
CAMBRIA & INDIANA RAILROAD
COMPANY; FLORIDA EAST COAST
RAILWAY COMPANY,
<u>Defendants,</u>

No. 97-1599

FLORIDA EAST COAST INDUSTRIES,
INCORPORATED; PITTSBURGH & LAKE ERIE
RAILROAD COMPANY, INCORPORATED;
RICHMOND, FREDERICKSBURG & POTOMAC
RAILROAD COMPANY, INCORPORATED;
UNION RAILROAD COMPANY,
INCORPORATED; BESSEMER AND LAKE
ERIE RAILROAD COMPANY,
INCORPORATED,
Defendants & Third Party Plaintiffs,

KAUFMAN & CANOLES, P.C.,
Party in Interest,

v.

THE RUNNYMEDE CORPORATION;
HOLLAND INVESTMENT AND
MANUFACTURING COMPANY,
INCORPORATED; AMERICAN PREMIER
UNDERWRITERS, INCORPORATED; WIMCO;
WIMCO METALS, INCORPORATED; WILMAT
HOLDINGS, INCORPORATED; TRIANGLE
INDUSTRIES, INCORPORATED; ILLINOIS
CENTRAL RAILROAD COMPANY,
Third Party Defendants.

VIRGINIA MANUFACTURERS ASSOCIATION;
AMERICAN AUTOMOBILE MANUFACTURERS
ASSOCIATION; INSTITUTE OF SCRAP
RECYCLING INDUSTRIES, INCORPORATED,
Amici Curiae.

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CA-94-716-2)

Argued: January 27, 1998

Decided: April 29, 1998

Before LUTTIG, Circuit Judge, GOODWIN,
United States District Judge for the
Southern District of West Virginia, sitting by designation, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Reversed and remanded by published opinion. Senior Judge Michael
wrote the opinion, in which Judge Luttig and Judge Goodwin joined.

_____

**COUNSEL**

**ARGUED:** Kevin Allan Gaynor, VINSON & ELKINS, L.L.P.,
Washington, D.C., for Appellants. Joseph Gerard Homsy, ZEVNIK,
HORTON, GUIBORD & MCGOVERN, Chicago, Illinois, for Appel-
lees. **ON BRIEF:** George C. Hopkins, S. Scott Gaille, VINSON &
ELKINS, L.L.P., Washington, D.C.; Joseph M. Spivey, III, HUN-
TON & WILLIAMS, Richmond, Virginia, for Appellants. John W.
Roberts, Sr., Lea D. Leadbeater, ZEVNIK, HORTON, GUIBORD &
MCGOVERN, Chicago, Illinois; James A. Gorry, III, TAYLOR &
WALKER, P.C., Norfolk, Virginia, for Appellees. Channing J. Mar-
tin, Christopher D. Pomeroy, WILLIAMS, MULLEN, CHRISTIAN
& DOBBINS, Richmond, Virginia; Carol C. Wampler, VIRGINIA
MANUFACTURERS ASSOCIATION, Richmond, Virginia; Julie C.
Becker, AMERICAN AUTOMOBILE MANUFACTURERS ASSO-
CIATION, Washington, D.C., for Amici Curiae Associations.
J. Thomas Wolfe, R. Michael Sweeney, INSTITUTE OF SCRAP
RECYCLING INDUSTRIES, INC., Washington, D.C., for Amicus
Curiae Institute.

_____

**OPINION**

MICHAEL, District Judge:

Since the enactment in 1980 of the Comprehensive Environmental
Response, Compensation, and Liability Act (CERCLA), litigation

7

over the cost of clean up of polluted sites has grown steadily. The courts have struggled to interpret and refine the enforcement and liability scheme laid out by the Act. This case joins the growing number of suits raising questions about the limits of liability for environmental pollution.

Between 1927 and 1978, Pneumo Abex Corporation's predecessor, Abex Corporation, operated a railroad parts foundry in Portsmouth, Virginia ("the Foundry"). Pursuant to contracts for sale ("conversion agreements"), railroads shipped used journal bearings to the Foundry for processing into new journal bearings. Journal or wheel bearings are used on railroad cars to hold lubricating oil against the axle to reduce friction. They are comprised of a lead lining ("babbitt") and a bronze or brass[1] "back." Pursuant to the conversion agreements, the railroads shipped the wheel bearings to the Foundry and received credit for the weight of wheel bearings against a purchase of new wheel bearings (after a deduction for weight attributed to dirt and grease). Among the sellers of journal bearings to the Foundry were the defendant-appellants: Norfolk Southern Railway Company, Norfolk & Western Railway Company, CSX Corporation, CSX Transportation, Incorporated, and Fruit Growers Express Company, Incorporated. These sellers were responsible for approximately 80.1% of journal bearings sold to the Foundry for reuse. Other sellers of wheel bearings settled with the defendants prior to trial.

Upon receipt, the Foundry heated the dirty wheel bearings in a low-temperature furnace to "sweat off" the dirt, grease, and any impurities and to separate the back from the lining. As the metal melted, impurities floated to the top and could be skimmed off. This slag was collected from the furnaces and placed on the back lot of the Foundry's property. The three furnaces used to heat metal at the Foundry also produced smoke and fumes. Employees were, at one point, required to wear air filters. A dust collector drew in the dust from the melting process and deposited it in large steel drums. These drums were also emptied of the dust onto the back lot.

---

[1] Both bronze and brass are copper alloys, usually made with tin or zinc. Bronze is a somewhat stronger alloy.

8

After the Foundry closed in 1978, the EPA sampled the soil in the Foundry lot and, over the course of several years, found elevated levels of lead, zinc, copper, tin, and antimony in the soil (all metals that were used to create the wheel bearings). The EPA designated the site as a Superfund Site. Beginning in 1986, Abex began response activities at the site pursuant to state and federal EPA orders. EPA estimates that the permanent remedy will cost at least $21 million. The current defendants and several other parties were contacted by the EPA as "potentially responsible parties" under the CERCLA.[2] While other potentially responsible parties cooperated with the EPA in clean up efforts, the defendants in the instant case refused to contribute to the response costs, asserting that they are not liable for the response costs under CERCLA. The plaintiffs sued for contribution under Sections 107 and 113 of CERCLA. The district court dismissed the 113 action as redundant. It then allocated responsibility and costs under Section 107. The defendants challenge the district court's finding that they are liable for the contamination of the site under CERCLA, that Pneumo Abex has standing to proceed under section 107, that section 107 is the proper vehicle for a suit for contribution by Pneumo Abex, and that the allocation of response costs is equitable.

STANDARD OF REVIEW

We review de novo the grant of summary judgment by the district court and the dismissal of the section 113 claim. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); West v. Clarke Murphy, Jr. Self-Employed Pension Plan, 99 F.3d 166, 167 (4th Cir. 1996). We review for abuse of discretion the grant of standing to sue under Section 107 of CERCLA and the equity of the award. United States v. R.W. Meyer, Inc., 932 F.2d 568, 571 (6th Cir. 1991); Cox v. Shalala, 112 F.3d 151 (4th Cir. 1997).

_____

**2** While CERCLA does not define "potentially responsible party," the courts have understood it to refer to a party who may be covered by the statute at the time that said party is sued under the statute. See, e.g., OHM Remediation Servs. v. Evans Cooperage Co., Inc. , 116 F.3d 1574, 1582 (5th Cir. 1997); Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1496 (11th Cir. 1996).

DISCUSSION

Covered Persons under CERCLA

In 1980, Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act to provide for the clean up of hazardous waste from polluted sites throughout the United States. Pub. L. No. 96-510, 94 Stat. 2767 (codified at 42 U.S.C. §§ 9601-9675 (1995)); United Technological Corp. v. United States E.P.A., 821 F.2d 714, 717 (D.C. Cir. 1987). Congress amended CERCLA with the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub. L. No. 99-499, 100 Stat. 1613, 1615 (codified as amended in scattered sections of 42 U.S.C.). The legislation, as amended, provides, first, a mechanism for clean up of sites polluted with hazardous waste and, second, a mechanism by which a governmental entity or private party may recover the cost of clean up from all parties responsible for the pollution of the site. 42 U.S.C. § 9607; 42 U.S.C. § 9613(f); Walls v. Waste Resource Corp., 823 F.2d 977, 980-81 (6th Cir. 1987). The cost of cleaning a site permanently is called the "response cost." Under CERCLA four classes of "covered persons" may be liable for response costs:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened

10

> release which causes the incurrence of response costs,
> of a hazardous substance.

42 U.S.C. § 9607(a). The four categories of covered persons delineated by the statute reach back through the causal chain from those who ultimately dispose of a hazardous substance to those who transport and generate it. OHM Remediation Servs., Inc. v. Evans Cooperage, Inc., 116 F.3d 1574, 1578 (5th Cir. 1997), citing, B.F. Goodrich Co. v. Murtha, 958 F.2d 1192, 1198 (2d Cir. 1992). Moreover, as OHM Remediation Services explains, "Because the Act imposes strict liability, Bell Petroleum, 3 F.3d [889,] ... 897 [(5th Cir. 1993)], plaintiffs generally need not prove causation, only that the defendant is a `covered person.'" 116 F.3d at 1578, quoting, United States v. Alcan Aluminum Corp., 990 F.2d 711, 721 (2d Cir. 1993).

The appellees in the case before the court contend that parties who arrange for the treatment of hazardous substances, whether or not such substances are waste, are covered persons who are liable under the statute. Appellants argue, on the other hand, that the statute encompasses only those parties who arrange for the treatment or disposal of hazardous substances which are also waste. The court finds that the appellees read the statute too broadly. Section 9601 of CERCLA states, "The term[ ] `treatment' shall have the meaning provided in section 1004 of the Solid Waste Disposal Act[42 U.S.C.A. § 6903]."**3** 42 U.S.C. § 9601(29). The Solid Waste Disposal Act (SWDA) definition of "treatment" presupposes discard. SWDA states, "The term `treatment,' when used in connection with hazardous waste, means any method, technique or process, including neutralization, designed to change the physical, chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume." Had the authors of CERCLA intended not to adopt the presupposition of SWDA, they were certainly capable of defining "treatment" otherwise. However, as the legislature chose to use the SWDA definition

---

**3** This section also provides that the definitions of "disposal" and "hazardous waste" may be found in SWDA. However, as such definitions are not at issue in the instant case, the court restricts its analysis to the term "treatment."

11

of treatment, and the presupposition inherent in the definition, it is not the role of this court to substitute another definition. Therefore, "treatment ... of hazardous substances" as used in CERCLA refers to a party arranging for the processing of discarded hazardous substance or processing resulting in the discard of hazardous substances.

In determining whether a transaction was for the discard of hazardous substances or for the sale of valuable materials, courts focus on several factors: the intent of the parties to the contract as to whether the materials were to be reused entirely or reclaimed and then reused, the value of the materials sold, the usefulness of the materials in the condition in which they were sold, and the state of the product at the time of transferral (was the hazardous material contained or leaking/ loose). See, Florida Power & Light Co. v. Allis Chalmers Corp., 893 F.2d 1313, 1317 (11th Cir. 1990) (finding no liability based on the intent of the parties and the fact that transformers were a valuable commodity, despite the fact that transformers contained hazardous substances); AM International Inc. v. International Forging Equipment Corp., 982 F.2d 989, 999 (6th Cir. 1993) (focusing on the value and usefulness of the materials sold and the intended purpose to find no liability for sellers of chemicals); United States v. Petersen Sand & Gravel, 806 F.Supp. 1346, 1354 (N.D. Ill. 1992) (focusing on the usefulness of the product, the valuable consideration, and the intent that the product would be entirely used up for the purpose for which it was sold to find no liability); Stevens Creek v. Barclays Bank of California, 915 F.2d 1355 (9th Cir. 1990) (focusing on constructive use of asbestos in construction of building to find no liability); Cadillac Fairview v. United States, 41 F.3d 562 (9th Cir. 1994) (holding seller of styrene liable because party's intent in transaction was for buyer to process styrene and remove hazardous materials from it so that styrene could be reused); Catellus v. United States, 34 F.3d 748 (9th Cir. 1994) (focusing on intent of parties to sale of batteries to determine that seller might be liable). However,"there is no bright line between a sale and a disposal under CERCLA. A party's responsibility ... must by necessity turn on a fact-specific inquiry into the nature of the transaction." Petersen, supra , 806 F.Supp. at 1354.

Careful consideration of the factors delineated by the case law and of the process of creating new wheel bearings from the used wheel bearings sent to the Foundry indicates that the conversion agreements

12

between the Foundry and the appellants were not transactions for disposal. The used wheel bearings transported to the Foundry were dirty and broken when they arrived. Moreover, the bearings were melted down in a process which produced both dust and slag (both of which were dumped in the back lot with the sand at the location later found to be contaminated). However, slag and dust would be produced even if virgin materials were used to make the new bearings. Unlike the processing of styrene in Cadillac Fairview v. United States, 41 F.3d 562 (9th Cir. 1994), the removal of contaminants was not the purpose of the transaction in the instant case. The bearings were processed because they were worn out or broken. The removal of the dirt and grease was incidental to remolding new bearings, just as it would have been incidental to the molding of new bearings from virgin materials.

Moreover, the dirt and grease were not the hazardous materials, the metals themselves were. In this way, the case before the court more closely resembles cases in which a party sells to another a material which becomes hazardous in its use, but is contained when sold. For example, in AM International Inc. v. International Forging Equipment Corporation, the Sixth Circuit held that the owner of chemicals did not "dispose" of the chemicals when they were sold in drums to the buyer who then allowed the building in which the drums were stored to deteriorate. 982 F.2d 989, 999 (6th Cir. 1993). Similarly, here, the hazardous substance -- the metals -- were in a contained form when delivered for sale.

The intent of both parties to the transaction was that the wheel bearings would be reused in their entirety in the creation of new wheel bearings. The Foundry paid the appellants for the bearings; the appellants did not pay the Foundry to dispose of unwanted metal. While there was a grease and dirt deduction taken from the price the Foundry paid for the used wheel bearings, that deduction was to account for weight, not reclamation costs. The Foundry refused to pay for any weight not attributable to the bearings themselves. The parties contemplated that the bearings were a valuable product for which the Foundry paid a competitive price. For these reasons, we hold that appellants are not "covered persons" under CERCLA.

13

Contribution Action Properly under Section 9613 or 9607

On remand, the district court, although it will dismiss the appellants from the suit, must apportion liability among the remaining parties to the suit. That apportionment process should be guided by section 9613 rather than section 9607. Section 9607 allows "any person" to recover all response costs from any responsible parties, whose liability is then generally joint and several. OHM Remediation Servs., Inc. v. Evans Cooperage, Inc., 116 F.3d 1574, 1578 (5th Cir. 1997); United States v. Alcan Aluminum Corp., 964 F.2d 252, 268 (3d Cir. 1992); Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc., 107 F.3d 1235, 1240 (7th Cir. 1997); United States v. Colorado & Eastern RR Co., 50 F.3d 1530, 1535 (10th Cir. 1995); United Technologies v. Browning-Ferris Indus., Inc., 33 F.3d 96, 100 (1st Cir. 1994); United States v. Rohm & Haas Co., 2 F.3d 1265, 1280 (3d Cir. 1993). Section 9613, added by SARA in 1986, creates a cause of action for contribution from "any other person who is liable or potentially liable." 42 U.S.C. § 9613(f)(1) (emphasis added). The courts have held consistently that section 9613 must be used by parties who are themselves potentially responsible parties. See, New Castle County v. Halliburton, 111 F.3d 1116, 1120 (3d Cir. 1997); Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1496 (11th Cir. 1996); United States v. Colorado & Eastern R.R. Co., 50 F.3d 1530, 1536 (10th Cir.1995); United Technologies Corp. v. Browning-Ferris Indus., Inc., 33 F.3d 96, 99 (1st Cir. 1994); Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994); Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 672 (5th Cir. 1989). [4] As the case before

_____

[4] Under section 9613, liability is allocated among other potentially responsible parties and the potentially responsible plaintiff "using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). See also Rumpke of Indiana,[supra,] 107 F.3d at 1240 (section 9613 allocates fault among potentially responsible persons); Colorado & Eastern, [supra,] 50 F.3d at 1536 & n. 5 (discussing equitable factors to be considered when resolving section 9613 claims)." New Castle County, supra, 111 F.3d at 1121-22. Unlike a section 9607 defendant, a section 9613 party need not demonstrate that the harm at the polluted site is divisible, he need only present equitable considerations to guide the allocation of liability. New Castle County, supra, 111 F.3d at 1121 n. 6, citing, Redwing Carriers, supra, 94 F.3d at 1513.

14

the court involves entirely potentially responsible parties, such parties must seek contribution under section 9613.

The opinion below is reversed and the case is remanded.

<u>REVERSED AND REMANDED</u>

15