# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3152

_____

Atlantic Research Corp.       *
                                       *
      Appellant,           *      Appeal from the United States
                                       *      District Court for the
      v.                    *      Western District of Arkansas.
                                       *
United States of America,       *
                                       *
      Appellee.            *

_____

Submitted: March 16, 2006
Filed: August 11, 2006

_____

Before WOLLMAN and RILEY, Circuit Judges, and ROSENBAUM,[1] District Judge.

_____

ROSENBAUM, District Judge.

Atlantic Research Corporation ("Atlantic") seeks partial reimbursement from the United States for costs incurred in an environmental cleanup. Atlantic's claim is based on the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675 (2005), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub. L. No. 99-499, 100 Stat. 1613, 1615. The issue for consideration is whether CERCLA forbids a party

_____

[1]The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

such as Atlantic, which has voluntarily cleaned up a site for which it was only partly responsible, to recover part of its cleanup costs from another liable party.[2] For the reasons that follow, we hold that CERCLA § 107 permits such a cause of action.

I.  Background

Atlantic retrofitted rocket motors for the United States from 1981 through 1986.  It performed this service at its Camden, Arkansas, facility.  The work included using high-pressure water spray to remove rocket propellant.  Once removed, the propellant was burned.  Residue from burnt rocket fuel contaminated the Arkansas site's soil and groundwater.

Atlantic voluntarily investigated and cleaned up the contamination, incurring costs in the process.  It sought to recover a portion of these costs from the United States by invoking CERCLA §§ 107(a) and 113(f).[3]  Atlantic and the government began to negotiate in an effort to resolve these financial matters.

The negotiations ended with the United States Supreme Court decision in Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157, 125 S. Ct. 577, 160 L. Ed. 2d 548 (2004) ("Aviall").  In Aviall, the court found a party could only attempt to obtain § 113(f) contribution "during or following" a §§ 106 or 107(a) CERCLA civil action. Id. at 161, 125 S. Ct. at 580.  As no action had been commenced against

---

[2]The district court dismissed this matter on the government's Rule 12(b)(6) motion.  As such, the court assumed the facts most favorably to Atlantic, the non-moving party.  We do the same; and therefore, assume, but do not decide, that the United States would be liable under CERCLA.

[3]These sections have been codified at 42 U.S.C. §§ 9607(a) and 9613(f).  For convenience, this Opinion refers to the statute sections as designated in CERCLA, rather than as later codified.

Atlantic under either §§ 106 or 107(a), the Aviall decision barred its § 113(f) contribution claim.

With its § 113(f) claim Aviall-foreclosed, Atlantic amended its complaint. The amended complaint relied solely on § 107(a) and federal common law. In lieu of answer, the government moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing this Court's pre-Aviall decision in Dico, Inc. v. Amoco Oil Co., 340 F.3d 525 (8th Cir. 2003) ("Dico") foreclosed Atlantic's § 107 claim. The district court agreed. Atlantic appeals.

As will be discussed in more detail below, Dico held that a liable party could not bring an action under § 107. Dico, 340 F.3d at 531. We recognize the generally preclusive effect of a previous panel's ruling. United States v. Blahowski, 324 F.3d 592, 596-97 (8th Cir. 2003). But this rule is not inflexible. Where the prior decision can be distinguished, or its rationale has been undermined, a subsequent decision can depart from the prior path.[4] We are convinced Dico is such a case; it is clearly distinguishable from the case at bar, and its analytic is undermined by Aviall.

II. Analysis

As this case turns on the interpretation of CERCLA, a federal statute, our review is de novo. Iowa 80 Group, Inc. v. Internal Revenue Service, 406 F.3d 950,

---

[4] "[I]t is well settled that a panel may depart from circuit precedent based on an intervening opinion of the Supreme Court that undermines the prior precedent." T.L. v. United States, 443 F.3d 956, 960 (8th Cir. 2006), citing Young v. Hayes, 218 F.3d 850, 853 (8th Cir. 2000). As will be seen, while Aviall has undermined Dico's reasoning for parties in Atlantic's position, its holding remains viable for those parties which still have recourse to relief under § 113. Accordingly, Dico can be reconciled with our present holding and we need not ultimately answer whether Aviall compels reconsideration of Dico.

952 (8ᵗʰ Cir. 2005). We undertake this review, recognizing our obligation to effectuate the intent of Congress when interpreting federal statutes. Id. To resolve the question before us, we must briefly review the intertwined history of CERCLA §§ 107 and 113, and then analyze this history in light of Aviall.

## A. CERCLA Cost Recovery and Contribution - Pre-Aviall

CERCLA is Congress's monumental attempt to "encourage the timely cleanup of hazardous waste sites," and "place the cost of that response on those responsible for creating or maintaining the hazardous condition." Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930, 935-36 (8ᵗʰ Cir. 1995) (internal quotations and citations omitted). To achieve these ends, CERCLA effectively transformed centuries of real property and tort liability law by making those who contaminate a site strictly liable for the costs of subsequent cleanup by others. See Alexandra B. Klass, From Reservoirs to Remediation: The Impact of CERCLA on Common Law Strict Liability Environmental Claims, 39 Wake Forest L. Rev. 903 (2004); Ronald G. Aronovsky, Federalism & CERCLA: Rethinking the Role of Federal Law in Private Cleanup Cost Disputes, 33 Ecology L. Q. 1, 9 (2006).

When the federal or a state government conducts the cleanup, CERCLA permits the sovereign to recover its costs from whomever is liable for the contamination. § 107(a)(4)(A). CERCLA also provides three methods by which private parties may recover cleanup costs. The first is found at § 107(a)(4)(B), a part of the original statute in 1980. Congress added the others, §§ 113(f)(1) and 113(f)(3)(B), as part of SARA.[5]

_____

[5]The last of these, § 113(f)(3)(B), concerns the rights of settling parties. As the parties in this case have obviously not reached a settlement, § 113(f)(3)(B) is not examined here.

Sections 107(a) and 113(f)(1) are central to our analysis. The Eighth, and many of its sister Circuits, have previously held that liable parties seeking reimbursement must use § 113(f)(1), and may not use § 107 for that purpose. Today, we consider whether this ruling remains viable in the post-<u>Aviall</u> world.

CERCLA's § 107(a) provides that "covered persons," which we will call "liable parties,"[6] are liable for, among other things:

> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan[.]

§ 107(a)(4)(A),(B). Courts have found in CERCLA's reference to "any other necessary costs of response" and "any other person," authority to allow private suits under § 107(a)(4)(B). <u>See</u> <u>Walls v. Waste Resource Corp.</u>, 761 F.2d 311, 318 (6ᵗʰ Cir. 1985) (collecting cases).

Section 113 contains a subsection entitled "Contribution," the first part of which states:

---

[6]Many prior opinions have called these "potentially responsible parties" (abbreviated "PRP"). We decline to use this term. The PRP term has been developed by the courts. It is not found in CERCLA. The term refers to "a party who may be covered by the statute at the time the party is sued under the statute." <u>Pneumo Abex Corp. v. High Point, Thomasville & Denton R. R. Co.</u>, 142 F.3d 769, 773 n.2 (4ᵗʰ Cir. 1998). After <u>Aviall</u>, the term has been weakened and "may be read to confer on a party that has not been held liable a legal status that it should not bear." <u>Consolidated Edison Co. c. UGI Utils., Inc.</u>, 423 F.3d 90, 98 n.8 (2d Cir. 2005).

Any person may seek contribution from any other person who is liable or potentially liable under [§ 107(a)], during or following any civil action under [§§ 106 or 107(a)]. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§§ 106 or 107].

§ 113(f)(1).

There is some similarity in the remedial responsibilities borne by liable parties under §§ 107(a) and 113(f). The Supreme Court has termed these sections' remedies "similar and somewhat overlapping," yet "clearly distinct." Compare Key Tronic Corp. v. United States, 511 U.S. 809, 816, 114 S.Ct. 1960, 1966, 128 L. Ed. 2d 797 (1994) with Aviall, 543 U.S. at 163 n. 3, 125 S. Ct. at 582 n.3. Each requires proof of the same elements. Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1496 (11th Cir. 1996). They differ, however, in procedure and scope.

1. Section 107(a) Remedies

Section 107(a) has a six-year statute of limitations, and allows a plaintiff to recover 100% of its response costs from all liable parties, including those which have settled their CERCLA liability with the government. §§ 113(g)(2), 107(a). Prior to SARA's enactment, some courts implied a right to contribution from § 107, see Mardan Corp. v. C.G.C. Music, Ltd., 804 F.2d 1454, 1457 n. 3 (9th Cir. 1986) (collecting cases), or as a matter of federal common law. United States v. New Castle County, 642 F. Supp. 1258, 1265-66 (D. Del. 1986). The right initially was thought to be uncertain in light of the Supreme Court's traditional reluctance to imply rights of action in the context of other statutes. See, e.g., Texas Indus., Inc. v. Radcliff

Materials, Inc., 451 U.S. 630, 639-40, 101 S. Ct. 2061, 2066, 68 L. Ed. 2d 500 (1981) (declining to imply an antitrust right of action for contribution).

### 2. Section 113 Remedies

Congress resolved the uncertainty when enacting SARA in 1986 by adding § 113 to "clarif[y] and confirm" a right to CERCLA contribution. United Technologies Corp. v. Browning-Ferris Indus., Inc., 33 F.3d 96, 100 (1st Cir. 1994), citing S. Rep. No. 11, 99th Cong., 1st Sess. 44 (1985). Section 113's explicit right to contribution is more restricted than that afforded by § 107. Section 113's right is subject to a three-year statute of limitations; plaintiffs can recover only costs in excess of their equitable share, and may not recover from previously-settling parties. § 113(f)(1), (f)(2), (g)(3).

### 3. The Section 107(a)/Section 113 Conflict - Pre-Aviall

Congress's addition of § 113 posed a dilemma. Courts saw that CERCLA, as amended, created a situation where litigants might "quickly abandon section 113 in favor of the substantially more generous provisions of section 107," thus rendering § 113 a nullity. New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1123 (3d Cir. 1997).

To prevent § 107 from swallowing § 113, courts began directing traffic between the sections. See id.; United Techns., 33 F.3d at 101; Bedford Affiliates v. Sills, 156 F.3d 416, 424 (2d Cir. 1998). As a result, regardless of which CERCLA section a plaintiff invoked, courts typically analyzed §§ 107 and 113 together, aiming to distinguish one from the other. See Bedford Affiliates, 156 F.3d at 424; Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344, 347 (6th Cir. 1998); Pneumo Abex Corp. v. High Point, Thomasville & Denton R. R. Co., 142 F.3d 769, 776 (4th Cir. 1998); Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298,

1301-02 (9th Cir. 1997); New Castle County, 111 F.3d at 1121-22; Redwing Carriers, 94 F.3d 1489, 1513 (11th Cir. 1996); United States v. Colorado & Eastern R. R. Co., 50 F.3d 1530, 1534-35 (10th Cir. 1995); United Techns., 33 F.3d at 99; Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994); Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 672 (5th Cir. 1989).

Traffic-directing dramatically narrowed § 107 by judicial fiat. On its face, § 107(a)(4)(B) is available to "any . . . person" other than the sovereigns listed in § 107(a)(4)(A). See Control Data Corp., 53 F.3d at 936 n.9. In practice, however, courts gradually steered liable parties away from § 107 and required them to use § 113; § 107 was reserved for "innocent" plaintiffs who could assert one of the statutory defenses to liability. See Bedford Affiliates, 156 F.3d at 424; Pinal Creek, 118 F.3d at 1301; New Castle County, 111 F.3d at 1124; Redwing Carriers, 94 F.3d at 1496; Centerior Service, 153 F.3d at 349; United Techns., 33 F.3d at 100; Akzo Coatings, 30 F.3d at 764-65. This cramped reading of § 107 prevented liable parties from using it to evade § 113's Congressionally-mandated constraints, thus preserving the vitality of § 113. See New Castle County, 111 F.3d at 1121; Colo. & Eastern, 50 F.3d at 1538; United Techns., 33 F.3d at 98.

In the pre-Aviall analysis, § 113 was presumed to be available to all liable parties, including those which had not faced a CERCLA action. See Akzo Coatings, 30 F.3d at 763 n. 4 (liable party's § 113 claim for costs voluntarily incurred held barred by settlement); Pinal Creek, 118 F.3d at 1306 (liable party's claim for costs voluntarily incurred governed by both §§ 107 and 113). Accordingly, most courts concluded liable parties could not use § 107. See Pnuemo Abex, 142 F.3d at 776 (collecting cases); but see Pinal Creek, 118 F.3d at 1302 (holding liable parties could not seek direct recovery under § 107, but that "§ 107 implicitly incorporates a claim for contribution" which remains available to liable parties through combined operation of both sections); United Techns., 33 F.3d at 99 n. 8 (suggesting, in dicta, that a liable party may bring contribution action under § 107).

Our opinion in <u>Dico</u> was the last in this pre-<u>Aviall</u> line. The Environmental Protection Agency ("EPA") had forced Dico, Inc., and another party to clean up an Iowa site which both had contaminated. Dico sued the other party, seeking direct recovery of 100% of its costs under § 107 and for contribution under § 113. The other party settled with the EPA and moved for summary judgment in Dico's lawsuit. The district court granted the motion. It found Dico's § 113 claims were barred by the settlement and, as a liable party, Dico had no right to recover its full cleanup cost under § 107.

Dico appealed the dismissal of its § 107 claim, arguing the Supreme Court's opinion in <u>Key Tronic</u> allowed liable parties a claim in direct recovery. We disagreed, noting <u>Key Tronic</u> dealt with a pre-SARA implied right to § 107 contribution. <u>Dico</u>, 340 F.3d at 531. When we affirmed the dismissal, we joined other Circuits in narrowly construing § 107, and holding a liable party may only assert a contribution claim under § 113. <u>Id.</u> at 530, citing among others <u>Bedford Affiliates</u>, 156 F.3d at 424; <u>Centerior Service</u>, 153 F.3d at 350; <u>Pinal Creek</u>, 118 F.3d at 1306; <u>Redwing Carriers</u>, 94 F.3d at 1496; <u>Colorado & Eastern</u>, 50 F.3d at 1536; <u>United Techns.</u>, 33 F.3d at 101; <u>Akzo Coatings</u>, 30 F.3d at 764; and <u>Amoco Oil</u>, 889 F.2d at 672. We now see that <u>Aviall</u> undermines <u>Dico</u>, and the judge-created analytic upon which it relies.

B. The Effect of <u>Aviall</u>

<u>Aviall's</u> facts are similar to those at hand. Aviall Services, Inc., purchased contaminated aircraft maintenance sites from Cooper Industries. The Texas Natural Resource Conservation Commission directed Aviall's efforts at environmental cleanup, but neither the Commission, the EPA, nor any private party brought a CERCLA action against Aviall.

After the cleanup, Aviall sued Cooper for both cost recovery under § 107 and contribution under § 113. It later amended its complaint, seeking recovery only under § 113, assuming - based on Circuit precedent – that its § 107 rights would be preserved in the § 113 claim. The district court granted Cooper's motion for summary judgment, holding Aviall had no right to § 113 relief absent a prior §§ 106 or 107 CERCLA enforcement action, and that Aviall's amended complaint abandoned any potential § 107 claim. A Fifth Circuit panel's affirmance was reversed, en banc.

On certiorari, the Supreme Court reversed again. Justice Thomas, writing for a seven-member majority, construed § 113's "during or following" language. He said, "[t]he natural meaning of this sentence is that contribution may only be sought subject to the specified conditions, namely, 'during or following' a specified civil action." Aviall, 543 U.S. at 165-66, 125 S. Ct. at 583. The Court found the words "during or following" established a condition precedent to a § 113(f) claim. As such, a court which allowed a § 113 contribution claim, absent the prior §§ 106 or 107 action, would render § 113's precondition a nullity.

Having made this determination, the Court turned to its previous Key Tronic reference to CERCLA's "similar and somewhat overlapping" remedies. The Court explained that §§ 107's and 113's remedies were only "similar" in that "both allow private parties to recoup costs from other private parties." Id. at 163 n. 3, 125 S. Ct. at 582 n. 3. The Court carefully noted, however, that "the two remedies are clearly distinct." Id.

Dissenting Justices Ginsburg and Stevens analyzed Key Tronic differently. They said the Key Tronic court had not questioned whether § 107 afforded liable parties a cause of action against other liable parties. It simply disagreed whether the right was implied or explicit. Id. at 172, 125 S. Ct. at 586-87. Justices Ginsburg and Stevens did not agree that Aviall's amended complaint abandoned a § 107 claim,

which they would have allowed to proceed.  Id. at 174.  The majority explicitly avoided this question, see id. at 173-74, 125 S. Ct. at 587-88, reserving it for another day.

C.  The Matter At Hand

That day has arrived.  We now ask:  Can one liable party recover costs advanced, beyond its equitable share, from another liable party in direct recovery, or by § 107 contribution, or as a matter of federal common law?

The Second Circuit is the only Court which has considered this question since Aviall.[7]  That Court revisited its pre-Aviall precedent, much as we have done here, and concluded that § 107 allowed one liable party to recover voluntarily incurred response costs from another. Consolidated Edison Co. v. UGI Utilities, Inc., 423 F.3d 90, 100 (2d Cir. 2005).  In reaching this conclusion, the court distinguished its holding in Bedford Affiliates, which – like Dico – had rejected a liable party's direct recovery claim under § 107.  Id. at 102.

---

[7] Pursuant to Federal Rule of Appellate Procedure 28(j), the United States has brought to our attention Elementis Chromium L.P. v. Coastal States Petroleum Co., 450 F.3d 607 (5th Cir. 2006).  In that case, the Fifth Circuit determined that the imposition of joint and several liability was inappropriate in a contribution claim under § 113.  The Court cited Redwing Carriers for the proposition that "'when one liable party sues another liable party under CERCLA, the action is not a cost recovery action under § 107(a),' and the imposition of joint and several liability is inappropriate." Elementis Chromium, 450 F.3d at 613.  As we have noted, Redwing Carriers is an example of the judicial traffic-directing  that narrowed the scope of § 107 prior to Aviall.  Because the Fifth Circuit was not asked to construe § 107 in its opinion, we decline to afford this isolated quotation touching on § 107 the weight the government believes it deserves.

In light of Aviall's holding that §§ 107 and 113's remedies are distinct, the Second Circuit held "it no longer makes sense" to view section 113(f)(1) as the exclusive route by which liable parties may recover cleanup costs. See Consolidated Edison Co., 423 F.3d at 99. The court looked to Section 107(a)(4)(B)'s "any other person" language, and found "no basis for reading into this language a distinction between so-called 'innocent' parties and parties which, if sued, would be held liable under section 107(a)." Id. at 99. So saying, the Second Circuit reopened § 107 cost recovery to liable parties.

Our Court now stands at the same crossroad. We agree with our sister Circuit, and hold that it no longer makes sense to view § 113 as a liable party's exclusive remedy. This distinction may have made sense for parties such as Dico, which was allowed to seek contribution under § 113. But here, Atlantic is foreclosed from using § 113. This path is barred because Atlantic – like Aviall – commenced suit before, rather than "during or following," a CERCLA enforcement action. Atlantic has opted to rely upon § 107 to try to recover its cleanup costs exceeding its own equitable share. We conclude it may do so.

The Supreme Court emphasized that §§ 107 and 113 are "distinct." Accordingly, it is no longer appropriate to view § 107's remedies exclusively through a § 113 prism, as we did in Dico, and as the government requests. We reject an approach which categorically deprives a liable party of a § 107 remedy. Like the Second Circuit, we return to the text of CERCLA, and find no such limitation in Congress's words.

We have held that "any other person" means any person other than the statutorily enumerated "United States Government or a State or an Indian tribe." Control Data Corporation, 53 F.3d at 936 n. 9. Atlantic is such a "person," see CERCLA § 101(G)(21); no one disputes its having incurred "necessary costs of response." On its face § 107 applies.

-12-

As the Second Circuit stated, "[e]ach of those sections, 107(a) and 113(f)(1), embodies a mechanism for cost recovery available to persons in different procedural circumstances." Consolidated Edison, 423 F.3d at 99. Thus, a liable party may, under appropriate procedural circumstances, bring a cost recovery action under § 107. This right is available to parties who have incurred necessary costs of response, but have neither been sued nor settled their liability under §§ 106 or 107.

We recognize that § 107 allows 100% cost recovery. Some pre-Aviall cases justified denying liable parties access to § 107, reasoning Congress would not have intended them to recover 100% of their costs and effectively escape liability. See, e.g., United Techns., 33 F.3d at 100 ("it is sensible to assume that Congress intended only innocent parties - not parties who were themselves liable - to be permitted to recoup the whole of their expenditures.") We agree, and reaffirm Dico's holding that a liable party may not use § 107 to recover its full response cost.

But § 107 is not limited to parties seeking to recover 100% of their costs. To the contrary, the text of § 107(a)(4)(B) permits recovery of "any other necessary costs of response . . . consistent with the national contingency plan." While these words may "suggest full recovery," United Techns., 33 F.3d at 100, they do not compel it.[8] CERCLA, itself, checks overreaching liable parties: If a plaintiff attempted to use § 107 to recover more than its fair share of reimbursement, a defendant would be free to counterclaim for contribution under § 113(f). Consolidated Edison, 423 F.3d at 100, n. 9; Redwing Carriers, 94 F.3d at 1495. Accordingly, we find that allowing Atlantic's claim for direct recovery under § 107 is entirely consistent with the text and purpose of CERCLA.

---

[8] Compare this text to § 107(a)(4)(A)'s more sweeping recovery of "all costs of response . . . not inconsistent  with the national contingency  plan."

-13-

Alternatively, we are satisfied that a right to contribution may be fairly implied from the text of § 107(a)(4)(B). Unlike some other statutes, CERCLA reflects Congress's unmistakable intent to create a private right of contribution. See Northwest Airlines, Inc. v. Transp. Workers Union of Am., 451 U.S. 77, 91, 101 S. Ct. 1571, 1580, 67 L. Ed. 2d 750 (1981) ("the ultimate question . . . is whether Congress intended to create the private remedy . . . that the plaintiff seeks to invoke"). We discern Congress's intent by looking to CERCLA's language, its legislative history, its underlying purpose and structure, and the likelihood that Congress intended to supersede or to supplement existing state remedies. Id.

Contribution is crucial to CERCLA's regulatory scheme. As the Supreme Court recognized in Key Tronic, "CERCLA is designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others." Key Tronic, 511 U.S. at 819, n. 13. At first, Congress left some CERCLA liability issues, such as joint-and-several liability and contribution, to be developed by the federal courts under "traditional and evolving principles of common law." United States v. Chem-Dyne Corp., 572 F. Supp. 802, 806-07 (S.D. Ohio 1983). Courts, thereafter, held § 107 and federal common law supported a right of contribution. Id.; Mardan Corp., 804 F.2d at 1457 n. 3. But when Congress revisited CERCLA in 1986, it enacted an explicit right to contribution in § 113. This reflects Congress's unambiguous intent to allow private parties to recover in contribution.

We must next ask whether, in enacting § 113, Congress intended to eliminate the preexisting right to contribution it had allowed for court development under § 107. We conclude it did not. The plain text of § 113 reflects no intent to eliminate other rights to contribution; rather, § 113's saving clause provides that "[n]othing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action" under §§ 106 or 107. § 113(f)(1). This view is further supported by examining § 113's legislative history reflecting Congress's intention to clarify and confirm, not to supplant or extinguish, the existing

-14-

right to contribution. See United Techns., 33 F.3d at 100, citing S. Rep. No. 11, 99th Cong., 1st Sess. 44 (1985).  We conclude therefore that if Congress intended § 113 to completely replace § 107 in all circumstances, even where a plaintiff was not eligible to use § 113, it would have done so explicitly.  Accordingly, we consider the plain language of CERCLA to be consistent with an implied right to contribution for parties such as Atlantic.

We conclude that the broad language of § 107 supports not only a right of cost recovery but also an implied right to contribution.[9]  See Pinal Creek, 118 F.3d at 1302 ("§ 107 implicitly incorporates a claim for contribution"); United Techns., 33 F.3d at 99 n.8 ("It is possible that, although falling outside the statutory parameters for an express cause of action for contribution [under § 113(f)(1)], a [volunteer remediator] who spontaneously initiates a cleanup without governmental prodding might be able to pursue an implied right of action for contribution under § 107(c)"). We discern nothing in CERCLA's words, suggesting Congress intended to establish a comprehensive contribution and cost recovery scheme encouraging private cleanup of contaminated sites, while simultaneously excepting – indeed, penalizing - those who voluntarily assume such duties.

The government argues that if we allow Atlantic a § 107 remedy, we will render § 113 meaningless.  Appellee's Br. at 24-25.  This argument fails; liable parties which have been subject to §§ 106 or 107 enforcement actions are still required to use § 113, thereby ensuring its continued vitality.  But parties such as Atlantic, which have not faced a CERCLA action, and are thereby barred from § 113, retain their access to § 107.  See Key Tronic, 511 U.S. at 818; United Techns., 33 F.3d at 99 n. 8; Pinal Creek, 118 F.3d at 1301.  This resolution gives life to each of

---

[9]As we have found a statutory right to direct recovery and contribution, we need not address Atlantic's claim of a similar right under federal common law. Accordingly, we leave that question for another day.

CERCLA's sections, and is consistent with CERCLA's goal of encouraging prompt and voluntary cleanup of contaminated sites. Key Tronic, 511 U.S. at 819, n. 13.

A contrary ruling, barring Atlantic from recovering a portion of its costs, is not only contrary to CERCLA's purpose, but results in an absurd and unjust outcome. Consider: in this, of all cases, the United States is a liable party (who else has rocket motors to clean?). It is, simultaneously, CERCLA's primary enforcer at this, among other Superfund sites. See Sophia Strong, Note, Aviall Services v. Cooper Industries: Implications for the United States' Liability Under CERCLA, the "Superfund Law", 56 Hastings L. J. 193, 198-99 (2004).

If we adopted the Government's reading of § 107, the government could insulate itself from responsibility for its own pollution by simply declining to bring a CERCLA cleanup action or refusing a liable party's offer to settle. This bizarre outcome would eviscerate CERCLA whenever the government, itself, was partially responsible for a site's contamination.

Congress understood the United States' dual role. When it enacted SARA, it explicitly waived sovereign immunity. CERCLA § 120(a). This waiver is part and parcel of CERCLA's regulatory scheme. It shows Congress had no intention of making private parties shoulder the government's share of liability. Strong, 56 Hastings L. J. at 209-10.

Here, Atlantic assisted the United States by helping modernize its defenses. Atlantic, recognizing the deleterious environmental consequences, remediated the environment without compulsion. Its choice to do so, especially where the ultimate compulsory authority lay with the United States-corporate, will not be held to its detriment. The United States, under CERCLA, is liable for its share of the burden.

The Court, then, concludes Congress resolved the question of the United States' liability 20 years ago. It did not create a loophole by which the Republic could escape its own CERCLA liability by perversely abandoning its CERCLA enforcement power. Congress put the public's right to a clean and safe environment ahead of the sovereign's traditional immunities.

We hold that a private party which voluntarily undertakes a cleanup for which it may be held liable, thus barring it from contribution under CERCLA's § 113, may pursue an action for direct recovery or contribution under § 107, against another liable party.

We reverse the judgment of the district court.

It is so ordered.

_____